# UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

## Case No. 23-11585

RICHARD COTROMANO, et al.,

    Plaintiffs-Appellants,

vs.

RAYTHEON TECHNOLOGIES
CORPORATION,
Pratt & Whitney Group, A Connecticut
Corporation,

    Defendant-Appellee.

_____/

District Court Docket No.s:
9:10:80883 (KAM)
(Lead), including
13-cv-80929 (Cotromano)
13-cv-80930 (DeCarlo)
13-cv-80932 (Dunsford)
13-cv-80931 (Newfield)
13-cv-81019 (Thibodeau)
13-cv-81044 (Cifrodella)
13-cv-81136 (Lozada)
13-cv-81179 (Florez)
13-cv-81180 (Peart)
14-cv-80655 (Wise)
17-cv-80545 (Featherston)

Appeal from the United States District Court
For the Southern District of Florida, West Palm Beach Division

_____

## PRINCIPLE BRIEF OF APPELLANTS

_____

SEARCY DENNEY SCAROLA BARNHART
& SHIPLEY
John Scarola
Florida Bar No. 169440
jsx@searcylaw.com
Mara R. P. Hatfield
Florida Bar No. 37053
mrh@searcylaw.com
2139 Palm Beach Lakes Boulevard
West Palm Beach, Florida 33409
Telephone: (561) 686-6300

*Attorneys for Plaintiffs-Appellants*

## APPELLANTS' CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

| |
|---|
| All persons who, on August 24, 2009, owned residential property within the neighborhood in Palm Beach County, Florida known as "the Acreage." The denial of certification of the claims alleged by these Plaintiffs is an issue in this appeal |
| **Adinolfe, Joseph**<br>Consolidated Litigant, separate claims |
| **Bartlit Beck, LLP**<br>Appellee's Counsel |
| **Cifrodella, Thomas**<br>Related Litigant. This person is a Plaintiff in a litigation relying in part on the theories of liability and expert disclosures at issue in this case |
| **Cotromano, Bethany**<br>Appellant on behalf of daughter, Also related Appellant, 22-13024 |
| **Cotromano, Richard**<br>Appellant on behalf of daughter, Also related Appellant, 22-13024 |
| **Craig, Debora**<br>Related Litigant. This person is a Plaintiff in a litigation relying in part on the theories of liability at issue in this case |
| **Craig, Raymond**<br>Related Litigant. This person is a Plaintiff in a litigation relying in part on the theories of liability at issue in this case |
| **Creed & Gowdy, P.A.**<br>Related Litigant Adinolfe's Counsel |
| **DeCarlo, Kristina M.**<br>Appellant |
| **DeCarlo, Frank**<br>Related Appellant, 22-13024 |
| **DeCarlo, Paulette**<br>Related Appellant, 22-13024 |
| **Dunsford, Gregory**<br>Appellant on behalf of son, also related Appellant, 22-13024 |

| | |
|---|---|
| **Dunsford, Jennifer**<br>Appellant on behalf of son, also related Appellant, 22-13024 | |
| **Ekstrand, Alyson**<br>Related Litigant. This person is a Plaintiff in a litigation relying in part on the theories of liability at issue in this case. | |
| **Ekstrand, Guy**<br>Related Litigant. This person is a Plaintiff in a litigation relying in part on the theories of liability at issue in this case. | |
| **Featherston, Joyce**<br>Appellant Personal Representative on behalf of son, also related Appellant, 22-13024 | |
| **Florez, Fedra M.**<br>Appellant | |
| **Gallagher, Sean W., Esq.**<br>Appellee Counsel | |
| **Gayahpersad, Reynold**<br>Related Litigant. This person is a Plaintiff in a litigation relying in part on the theories of liability at issue in this case | |
| **Gayahpersad, Teri**<br>Related Litigant. This person is a Plaintiff in a litigation relying in part **on** the theories of liability at issue in this case. | |
| **Gdanski, Jonathan R., Esq.**<br>Related Litigant's (Adinolfe) Counsel | |
| **Genck, Jill M.**<br>Related Litigant. This person is a Plaintiff in a litigation relying in part on the theories of liability at issue in this case | |
| **Genck, Jonathan C.**<br>Related Litigant. This person is a Plaintiff in a litigation relying in part on the theories of liability at issue in this case | |
| **Gowdy, Bryan S., Esq.**<br>Related Litigant's (Adinolfe) Counsel | |
| **Groden, Alexander L., Esq.**<br>Related Litigant's (Adinolfe) Counsel | |
| **Gunster Yoakley & Stewart, P.A.**<br>Appellee Counsel | |
| **Haberman, Jeffrey L., Esq.**<br>Related Litigant's (Adinolfe) Counsel | |
| **Hammer, Steven J., Esq**. | |

| |
|---|
| Related Litigant's (Adinolfe) Counsel |
| **Hatfield, Mara R.P., Esq.** <br> Appellant Counsel |
| **Law Offices of Craig R. Zobel, P.A.** <br> Related Litigant's (Adinolfe) Counsel |
| **Law Offices of Steven J. Hammer, P.A.** <br> Related Litigant's (Adinolfe) Counsel |
| **Lozada, Ida** <br> Appellant |
| **Lozada, Jesus** <br> Appellant |
| **MacNally, Andrew C., Esq.** <br> Appellee Counsel |
| **Marra, Honorable Kenneth A.** <br> Trial Judge |
| **McElroy, Daniel R., Esq.** <br> Appellee Counsel |
| **Patrie, Kimberly** <br> Related Litigant. This person is a Plaintiff in a litigation relying in part on the theories of liability at issue in this case |
| **Peart, Roderick** <br> Appellant |
| **Peart, Yvette** <br> Appellant |
| **Raytheon Technologies Corporation (Stock Ticker: NYSE: RTX)** <br> Formerly known as United Technologies Corporation <br> Appellee |
| **Scarola, John, Esq.** <br> Appellant Counsel |
| **Schlesinger Law Offices, P.A.** <br> Related Litigant's (Adinolfe) Counsel |
| **Schlesinger, Scott P., Esq.** <br> Related Litigant's (Adinolfe) Counsel |
| **Schwinghammer, Jr., Gregory J., Esq.** <br> Appellee Counsel |
| **Searcy Denney Scarola Barnhart & Shipley, P.A.** <br> Appellant Counsel |
| **Thibodeau, Luz** <br> Appellant |

| | |
|---|---|
| **Thibodeau, Steven**<br>Appellant | |
| **Tvenstrup, Kevin R.**<br>Related Litigant. This person is a Plaintiff in a litigation relying in part on the theories of liability at issue in this case | |
| **Wise, Ronald G., Deceased, Estate of**<br>Appellant | |
| **Zobel, Craig R., Esq.**<br>Consolidated Litigant's Counsel | |

# STATEMENT REGARDING ORAL ARGUMENT

This case presents complex legal issues and a complicated record.

First, The District Court ruled that these claims accrued when Plaintiffs were diagnosed with cancer as that is "when they would have become aware of their injury" and dismissed the claims as untimely. This Court will be reviewing that ruling de novo. Arguing that the "date of diagnosis" misidentifies the injury as "cancer," Plaintiffs offered three separate well-established Florida law doctrines support the position that Plaintiffs causes of action are not precluded by the statute of limitations even before the Plaintiffs could possibly have known of the toxic exposure at issue. That exposure is the injury. In its disjointed order, the District Court determined that Florida does not provide *any* discovery date doctrine for negligence claims and rejected existing caselaw in favor of "the diagnosis date." The dismissal of actions as precluded before they could ever be brought warrants argument.

Separately, the Court will review for abuse of discretion the District Court's permitting P&W's untimely assertion of the statute of limitations defense, after P&W purposely delayed that assertion until after the close of pleadings. The inequities inherent in the order warrant argument.

# TABLE OF CONTENTS

## Contents

APPELLANTS' CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ......................................................... i

STATEMENT REGARDING ORAL ARGUMENT .............................................. i

TABLE OF CONTENTS......................................................................................... ii

CITATIONS.......................................................................................................... iv

JURISDICTIONAL STATEMENT .................................................................... viii

Statement of the Issues.........................................................................................1

Statement of the Case...........................................................................................2

    A.    Course of proceedings. .................................................................................2

      1.    The Complaints, the Removals, and the Answers. .....................................2

      2.    Subsequent Case filed by Ronald Wise and the Motions to Dismiss. ..........4

      3.    The agreed upon removal of the Featherston Action ...................................5

      4.    P&Ws Original Answers and Selective Assertion of SOL Defense.............6

      5.    Initial Motion for Summary Judgment based on Transport Only................8

      6.    Order Setting Trial and Extension of Disclosures.......................................9

      7.    Disclosure of expert reports and the Motions to Amend .............................9

      8.    Motion to Amend the Answers to the Second Amended Complaints ........11

      9.    Stay of the Proceedings .............................................................................13

      10.  The Lifting of the Stay and the Dispositive Motions at Issue....................14

    B.    Relevant Facts. ...........................................................................................15

    C.    Standard of Review ....................................................................................15

Summary of Argument ........................................................................................16

**Argument** ................................................................................................20

I.   Claims Remedying an Injurious Exposure to Contaminated Soil Product are Not Precluded by P&W's Limitations Defense. .................................................20

   A.   The District Court failed to identify the correct injury and chose an arbitrary date of accrual for these claims that is counter to Florida law. ..........20

   B.   Latent injury claims accrue upon discovery of disease and its causal connection to an exposure event. .....................................................................24

   C.   A Public Liability Claim is most akin to Florida's Chapter 376 civil remedy provisions, for which there is no statute of limitations defense. ..........34

   D.   The Continuing Trespass Doctrine Ought to Apply. ...................................40

II.   P&W Should Not Have Been Afforded Leave to Amend its Defenses ......42

   A.   Defendant's failure to establish good cause for disturbing the elapsed pleading deadline under Rule 16(b necessitated a denial of its motion. ...........42

   B.   The late amendment prejudiced the Plaintiffs and was not justified under Rule 15 because it showed bad faith and dilatory motive. ...............................44

   C.   This Defendant should not be afforded the notice exception that is afforded defendants who still provide notice under Rule 8. ...........................................48

**CONCLUSION** ......................................................................................52

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS** ...53

**CERTIFICATE OF SERVICE** ...............................................................1

CITATIONS

**Cases**

*American Nat. Bank of Jacksonville v. Federal Deposit Ins. Corp.*,
  710 F.2d 1528, 1537 (11th Cir.1983)……………………………………………50

*Blonder–Tongue Laboratories, Inc. v. University of Illinois
  Foundation*,                                                    402 U.S.
  313 (1971)……………………………………………………………..51

*Carter v. Brown & Williamson Tobacco Corp*.,
  778 So. 2d 932 (Fla. 2001) ……………………………………………………30

*Copeland v. Armstrong Cork Co.,*
  447 So. 2d 922 (Fla.3rd DCA 1984……………………………………………26

*Curd v. Mosaic Fertilizer, LLC*,
  39 So.3d 1216 (Fla. 2010) ……………………………………………………38

*Diamond v. E.R. Squibb & Sons, Inc*.,
  397 So. 2d 671 (Fla. 1981) ……………………………………………………30

*D.H. v. Adept Cmty. Servs., Inc.*,
  217 So. 3d 1072 (Fla. Dist. Ct. App. 2017) …………………………………...18

*Doe. v. Cutter Biological*,
  813 F. Supp. 1547, 1555 (M.D. Fla. 1993
  *aff'd,* 16 F. 3d 1231 (11th (Cir. 1994)). ……………………………………5,16

*Elkins v. R.J. Reynolds Tobacco Co*.,
  65 F. Supp. 3d 1333 (M.D. Fla. 2014) ………………………………………30

*Eagle-Picher Indus., Inc. v. Cox,*
  481 So. 2d 517 (Fla. 3rd DCA 1985),…………………………………… .24

*Florida Power & Light Co. v. Allis Chalmers Corp.,*
  85 F.3d 1514 (11th Cir. 1996) ……………………………………………17, 20-22

*General Dynamics Corp. v. Brottem*,
  53 So.3d 334 (Fla. 5th DCA, 2010) …………………………………………..40

iv

*Grant v. Preferred Research, Inc.,*
   885 F.2d 795 (11th Cir. 1989…………………………………...……..11, 15, 49

*Hall v. Hall,*
   138 S.Ct. 1118 (2018) ………………………………………………..……viii

*Hargett v. Valley Federal Sav. Bank,*
   60 F.3d 754, 761 (C.A.11 (Ala.), 1995) …………………………………43, 45

*In re TMI Litig. Cases Consol. II,*
   940 F.2d 832  (3d Cir. 1991) ……………………………………..……ix, 36

*Jones v. Childers,*
   18 F.3d 899, (11th Cir. 1994) ……………………………………………46-47

*Jerue v. Drummond Co., Inc.,*
   No. 8:17-CV-587-T-17AEP (M.D. Fla. Aug. 17, 2017) ……………………….39

*Karjala v. Johns-Manville Products Corp.*
   523 F.2d 155 (8th Cir.1975) ……………………………………………………26

*Keybank Nat'l Ass'n v. Hamrick,*
   576 Fed. App'x . 884 (11th Cir. 2014) …………………………………………51

*Larson & Larson,* P.A. v. TSE Indus., Inc.,
   22 So. 3d 36 (Fla. 2009) …………………………………………………18,30

*Latimer v. Roaring Toyz, Inc.,*
   601 F.3d 1224 (11th Cir. 2010) ………………………………………………...51

*Lieupo v. Simon's Trucking, Inc.,*
   286 So. 3d 143 (Fla. 2019) ………………………………………………..37

*Nevels v. Ford Motor Co.,*
   439 F.2d 251, 257 (5th Cir.1971) ………………………………………………43

*Nieman v. NLO, Inc.,*
   108 F.3d 1546 (6th Cir.1997) …………………………………………………..36

*O'Conner v. Commonwealth Edison Co.,*
   13 F.3d 1090 (7th Cir.) ………………………………………………..……..36

*Oxford Furniture Companies, Inc. v. Drexel Heritage Furnishings, Inc.*,
984 F.2d 1118 (C.A.11 (Ala.), 1993). ………………………………………15,45

*Pinares v. United Techs. Corp.*,
973 F.3d 1254 (11th Cir. 2020) ……………………………………vii, ix, 7, 13

*Pulmosan Safety Equip. Corp. v. Barnes*,
752 So. 2d 556 (Fla. 2000……………………………………………....25,30

*Roberts v. Florida Power & Light Co.*,
146 F.3d 1305 (11th Cir. 1998) …………………………………...ix, 35-37

*Smith v. Duff & Phelps, Inc.*,
F.3d 488 (11th Cir. 1993). ……………………………………...…………45

*Sosa v. Airprint Sys.*,
133 F.3d 1417 (11th Cir. 1998) ………………….……………...……43

*State of Fla. Dep't of Envtl. Reg. v. CTL Distribution, Inc.*,
715 So. 2d 262(Fla. 3d DCA 1998). …………………………………………41

*State, Dept. of Environmental Protection v. Fleet Credit Corp.*,
691 So.2d 512 (Fla. App. 4 Dist.,1997) …………………………………...41

*Urie v. Thompson*,
337 U.S. 163 (1949). ……………………………………..……………….25

*Wilson v. Johns-Manville Sales Corp.*,
684 F.2d 111 (D.C. Cir. 1982) ………………………………………….24


Statutes

28 U.S.C. § 1291………………………………………………………viii

42 U.S.C. § 2014………………………………………………………..1

42 U.S.C. § 2210……………………………………………...ix, 4, 37

Section 95.11 Florida Statutes…………………………………….…..29,31,40

Section 95.031 Florida Statutes ………………………………………………29

Section 376.308 Florida Statutes…………………………………………34-40

Section 376.316 Florida Statutes…………………………………………34-40

Section 768.81 Florida Statutes…………………………………...………………32

**Other Authorities**

*Fla. Std. Jury Instr. (Civ.)* Section 403, Product Liability ……………………27-29

**Rules**

Fed. R. Civ. P. 8 ........................................................................................43

Fed. R. Civ. P. 15(a)..................................................................................43

Fed. R. Civ. P. 16(b) .................................................................................43

Fed. R. Civ. P. 44 ..................................................................................... viii

# JURISDICTIONAL STATEMENT

## *Appellate Jurisdiction*

Pursuant to 28 U.S.C. § 1291, this Court has appellate jurisdiction over the judgment entered by the District Court on April 10, 2023, Doc. 555. The Notice of Appeal as to Doc. 555 was timely filed on May 8, 2023. (Doc. 561).

The order was final. Since their cancer diagnoses preceded the filing of their cases by more than four years, the District Court found that the claims were untimely as a matter of law. (Doc. 554). While the cases alleging the same exposure maintained by persons who received later cancer diagnoses are still pending in the consolidated matter, this judgment does not affect them as the order consolidating the cases expressly invoked Fed. R. Civ. P. 42. (Doc. 203). See generally *Hall v. Hall*, 138 S. Ct. 1118 (2018). All docket entry citations are to the lead consolidated action, *Pinares v United Technologies Corporation*, Case No. 10-80883) unless otherwise noted.

## *Subject Matter Jurisdiction*

Nine of the cases were filed in Florida's Fifteenth Judicial Circuit Court. P&W removed the cases pursuant to 42 USC  2210(n)(2), the Price Anderson Act (PAA). (Doc. 564-03 thru 11). Plaintiffs challenged the constitutionality of removing the claims under 42 USC 2210. Congress cannot create federal jurisdiction over claims by nominally creating a federal cause of action without creating an Article

III constitutional quandary. *See In re TMI Litig. Cases Consol. II*, 940 F.2d 832, 855 (3d Cir. 1991) noting that actions asserting nuclear incidents must first be assessed to see whether the claims are truly a Price Anderson claim.

As noted by this Court, the PAA is a "federal statutory scheme (limiting) the liability of operators of nuclear power facilities and provides for indemnification but does so against a stringent regulatory background 42 USC 2210." *Roberts v. Florida Power & Light Co.*, 146 F.3d 1305, (11th Cir. 1998). Since the actions do not concern a nuclear power facility and do not include the use of indemnified products by the Department of Energy Contractor, Plaintiffs have consistently argued that there is no jurisdiction for these claims. No provision of the PAA scheme applies except for removal under 42 USC 2210(n)(2)).

Plaintiffs continue to argue that the removal of these claims was not proper. Cognizant that this Court has determined in a limited context that these claims are PAA claims, *Pinares v. United Techs. Corp*., 973 F.3d 1254 (11th Cir. 2020), that every other Circuit to examine the issue of whether the PAA encompasses non-indemnified claims has ruled that they do include such claims, and that the Supreme Court recently denied a Petition for Certiorari filed by in one such action, as detailed in Plaintiffs' Memorandum in Opposition to the Motion for Summary Judgment,  (Doc. 549 at 19-20), Plaintiffs focus this Appeal on the issue of whether dismissal of these claims as PAA claims was warranted under the law.

Statement of the Issues

Plaintiffs seek remedy for injurious exposures. They claim that P&W mishandled radioactively contaminated soils which were found in the Acreage community's residential fill—supplied by P&W's transporters. P&W argues that the date of accrual for these claims must "be derived from the law of the State" where the incident occurred. 42 U.S.C. § 2014(hh). The District Court granted summary judgment for the defense, holding that Plaintiffs' claims accrued when they learned they had cancer. Doc. 554. The alleged injury, however, is the exposure to radioactive materials.  Reversal is required if the answer to any of these questions is "yes:"

a. Should the date of accrual for these PAA claims be derived from the manifestation doctrine, providing that latent injury actions accrue when a connection between an exposure and disease is ascertainable?

b. Should the rules regarding the statute of limitations defense to PAA public liability claims be derived from Chapter 376 Florida Statutes, providing civil remedy for claims alleging damages resulting from violations of state environmental regulations?

c. Should public liability claims be considered continued trespass claims, for which the limitations period commences only if and when the wrongful invasion ceases?

d. Since P&W affirmatively abandoned the affirmative defense of statute of limitations, should it have been precluded from amending the pleadings deadline to do so when its reason for delay was purposeful and deleterious, resulting in the Plaintiffs inability to plead an avoidance?

Statement of the Case

**A. Course of proceedings.**

   ***1. The Complaints, the Removals, and the Answers.***

In August 2013, actions were filed in The Fifteenth Judicial Circuit Court of Florida for pediatric brain cancer survivors Elizabeth Cotromano, Kristina DeCarlo, Jessica Newfield, Garrett Dunsford alleging exposure to P&W materials. Doc. 564-3 to 564-6. Complaints as attached to Notices of Removal.

Each case alleged that that from 2001 through at least 2009, Defendants allowed pollution to trespass onto the Plaintiffs' property and person. Doc. 564-03 – pg. 21-23.

These Plaintiffs each alleged to be one of the cases at issue in the Florida Department of Health finding that beginning in 2004, the rate of pediatric brain cancer diagnosis became significantly elevated. The confirmation of the cluster came in 2010 as did the determination that state agencies could find no cause for the cluster. (Doc. 564-3 through 6.)

Each alleged that P&W and Palm Beach Aggregates were jointly and severally liable for radioactive contamination discovered during by Plaintiffs in 2013, and that the acts causing such contamination had been concealed and were still subject to discovery. (Doc. 564-3 through 6.) Each case alleged that P&W conduct hampered

the FDOH investigation and that P&W's decades of remediation procedures were not meaningfully overseen by the regulators. (Doc. 564-3 – pg.5-6, 19-20.)

The parents of Rodeania Peart, a fellow member of the FDOH pediatric brain cancer cluster, filed a complaint on November 13, 2013. Doc. 564-11.  In the interim, adult survivors Steven Thibodeau, Thomas Cifrodella and Ida Lozada filed actions including similar allegation. (Doc 564-7 thru 9.) Fedra Florez Moreno filed a similar wrongful death action for her deceased husband Alex Florez on November 4, 2013. Doc. 564-10.

Plaintiffs concede that the cancer diagnoses began in 2004, more than four years before any cluster was declared or the concern about any exposure arose, and each diagnoses occurred more than four years before the filing of these actions. (Doc. 548 - pg.6.)  In all versions of the complaint, including the ones at issue at the time of the Motion for Summary judgment, Plaintiffs alleged that

- the damages were continuing and ongoing,
- that the radiation doses received by each Plaintiff as result of the exposure continues to accrue,
- that P&W negligent remediation caused a continuous emission,
- that its breaches of reasonable care have been ongoing and continuous, and,
- that the damages (including but not limited to cancer and other mal effects of the exposure) are ongoing and continuous.

(Doc. 422 - pg. 6, 46, 52, 55, 58, 60).

In each most recent complaint at issue, the word "product" appears over 29 times, including for example in the allegation: "The synergistic effect of the exposure to

these metals and to naturally occurring and non-naturally occurring radioactive *products* leached into the environment by these Defendants was a material and substantially contributing cause of the brain tumor cluster." (Doc. 422 – pg. 36, par. 141, P&W Amended Answer to the Second Amended Complaint in Cotromano).

All of these cases were removed to the United States District Court Southern District of Florida within 30 days of filing pursuant to 42 USC 2210(n)(2). Despite the fact that at least one case alleged complete diversity, this was the only basis for removal. Doc. 564-3 through 11, and specifically Doc. 564-6. P&W claimed that Plaintiffs alleged a nuclear incident because the contaminants at issue constituted "nuclear by-product materials" under 42 USC 2214.

Plaintiffs filed Motions for Remand arguing that P&W failed to establish federal jurisdiction under 42 USC 2210(n)(2) removal because it did not identify any financial protection afforded by 42 USC 2210 that covered the source or by-product materials at issue. (Doc. 564-1 through 3 and 564-13 through 22.) On March 24, 2014, the District Court, then J. Ryskamp, denied the Motions for Remand. (Doc. 561-01.)

### 2. *Subsequent Case filed by Ronald Wise and the Motions to Dismiss.*

On May 19, 2014, the Wise Plaintiffs filed a complaint alleging the same injurious exposure resulted in his illness and various evolving cancerous diagnoses. DE 564-12.

On June 19, 2014, P&W filed motions to dismiss all of these cases. It did not argue that claims filed in 2013 were subject to a statute of limitations defense.[1]

In the *Wise* matter, P&W raised the statute of limitations as one of several grounds for dismissal, arguing the claim was untimely. Doc. 17 in 14:80655 in *Wise.* There, P&W argued that Wise's claims accrued in 2009—when the cluster was designated. P&W specifically acknowledged that the date of diagnosis has nothing to do with accrual of exposure actions. Instead, the claim accrues when the Plaintiff has "notice of the possible invasion of [his] legal rights," citing *Doe. v. Cutter Biological*, 813 F. Supp. 1547, 1555 (M.D. Fla. 1993 *aff'd,* 16 F. 3d 1231 (11th (Cir. 1994). (Doc. 398-02 – pg. 15.). (Doc. 398-02 –P&W Motion to Dismiss in Wise pg. 15.) On November 6, 2014, the District Court denied the Motions to Dismiss in all cases. Doc. 101 in 9:13-cv-80929 in *Wise.*

### 3.  *The agreed upon removal of the Featherston Action*

In 2017, the parties agreed to refile the wrongful death case filed by Joyce Featherston on behalf her deceased son Joseph Michael Baratta. (Doc. 1 in *Featherston*, 9:17-cv-80545).  The case was litigated in the Fifteenth Circuit Court for

---

[1] Doc 82 in 9:13-cv-80929 Cotromano, Doc. 79 in 9:13-cv-80930 *DeCarlo*, Doc. 70 in 9:13-cv-80931 *Newfield*    1, Doc. 76 in 9:13-cv-80932 *Dunsford*, Doc. 61 in 9:13-cv-81019 *Thibodeau,* Doc. 55 in 9:13-CV-81044 , Doc.60 in 9:13-CV-81136 *Lozada*, Doc. 54 in 9:13-CV-81179 *Florez,* Doc. 54 in 9:13-CV-81180 *Peart.*

over six years before it was refiled by agreement in the District Court. Plaintiffs

agreed to remove the action to Federal court and not to challenge jurisdiction and

P&W agreed to choose the case as the second case to be tried bellwether. (Doc. 1-2 in

*Featherston*, 9:17-cv-80545).

### 4. P&Ws Original Answers and Selective Assertion of SOL Defense.

Upon the 2014 denial of its motions to dismiss in November 2014, P&W began

filing answers. The answers included a predictable pattern of where P&W did and did

not raise the defense:

P&W did not raise the statute of limitations defense in any of its Answers to the

cases filed in 2013.[2]

- P&W did not state the defense against any claim where the injury was
  diagnosed as cancer within four years of the filing. These "later diagnosis
  cases" are still pending in the District Court. Doc. 568. So, for example,
  P&W's answer in the matter regarding wrongful death of Eric Patrie, filed
  in November 2014, did not raise the defense of Statute of Limitations even
  though the exposure at issue was the same far earlier exposure alleged in the

---

[2] : Doc 82 in 9:13-cv-80929 Cotromano, Doc. 79 in 9:13-cv-80930 *DeCarlo*, Doc. 70
in 9:13-cv-80931 *Newfield*   1, Doc. 76 in 9:13-cv-80932 *Dunsford*, Doc. 61 in 9:13-
cv-81019 *Thibodeau,* Doc. 55 in 9:13-CV-81044 , Doc.60 in 9:13-CV-81136 *Lozada*,
Doc. 54 in 9:13-CV-81179 *Florez,* Doc. 54 in 9:13-CV-81180 *Peart.*

2013 cases. Eric Patrie was diagnosed with brain cancer in 2011 and died in 2014. (Doc. 1 and Doc. 12 in 9:14-cv-81403.)

- P&W again chose not to raise the Statute of Limitations defense in its Answer to the transferred of the Featherston action. (Doc. 242.)

- P&W did raise the Statute of Limitations defense in cases where the diagnosis was more than four years before the filing of the complaint <u>and</u> more than four years from the onset of the cancer cluster investigation including two matters relevant here:

  - First, the defense was raised in the Wise matter. Doc. 46 in *Wise,* 9:13-cv-80655.

  - Second, the defense was raised in another matter which has been before this Court, *Pinares v. United Techs. Corp*., 973 F.3d 1254 (11th Cir. 2020). (Doc. 14 Santiago, 14-CV-81385). Santiago was diagnosed in November 2009 during the cluster investigation. Her case was filed shortly after she turned 18 in November 2014.

In each of its answers in all of these actions, P&W raised nearly thirty defenses and was selective only in regard to whether it plead the statute of limitations defense. For example, P&W raised defenses based on Price Anderson, including but not limited to the following, in all cases:

Pratt &Whitney avers that Plaintiff's state law claims are preempted by the Price-Anderson Act to the extent those claims are based on injury resulting from radioactive materials.

Doc. 242- pg. 55 and 59 (Featherston federal Answer filed after case consolidated).

### 5. *Initial Motion for Summary Judgment based on Transport Only.*

On May 5, 2016, P&W filed its first dispositive motion in each of these cases. It did not raise the statute of limitations in any case, including even in the Wise and Santiago matter where it had been plead from the outset. Instead, as stated in that first dispositive motion, "(P&W)'s focus in this motion is on a single, dispositive issue as to which Plaintiffs have offered no evidence at all: the alleged transport of materials from (P&W)'s facility to the Acreage." The motion was premised solely upon the testimony of its employees who all denied that P&W dumped soil in the Acreage. Plaintiffs responded on June 6, 2016. (Doc. 90 and Doc. 103 in *Wise* 14-cv-80655.)

On June 10, 2016, the District Court issued a show cause order as to why the cases should not be consolidated with the *Pinares* matter under Rule 42; and on July 15, 2016, the cases were thus consolidated. Doc. 203. The Scheduling Order did not contemplate amending the pleadings as that deadline had elapsed. Doc. 205.

### 6. Order Setting Trial and Extension of Disclosures

During the pendency of these cases, Plaintiffs gained access to manifests of transports revealing that regulatory reports describing the transport of P&W soil, cited in the FDOH investigation, listed the wrong location for the soil destination. Plaintiffs then learned that P&W sent soil from a scrapyard that had been the site of radioactive waste burial to a local soil recycling company, Magnum, in western Palm Beach County, and used local fill providers to transport the soil. Doc. 207.

In February 2017, in light of these evidentiary developments and the good cause implied therein, these Plaintiffs were permitted to modify the scheduling order. New expert disclosure deadlines would be provided for all cases. Doc. 218.

Cynthia Santiago's case (14-CV-81385) was the first case set for trial among the Acreage Cancer Cluster cases. Pursuant to the order setting the first cases, all cases were subject to deadlines regarding certain expert disclosures. Doc. 237.

### 7. Disclosure of expert reports and the Motions to Amend

As noted by P&W, Plaintiffs disclosed expert opinions focusing exclusively on the purported link between ionizing radiation and brain cancer in December 2017, some three years after the pleadings closed. Plaintiffs also disclosed expert opinions identifying the source of the radiation exposure as contamination found in soils delivered to the Acreage by P&W transporters. Doc. 539-4.

On May 14, 2018, P&W moved for summary judgment in the Santiago action. As conceded in its Principal Brief as Appellee in that matter, the thrust of P&W's motion concerned the merits of Santiago's suit, an argument relying on product liability precedent. Doc. 328 at 5-9 and 11-21. Doc. 329, P&W Answer Brief in *Santiago*, at 14.

The argument regarding the statute of limitation defense as stated in the Santiago motion for summary judgment marked the first time in 3 years of litigation that P&W would argue that the date of accrual in the few cases where it was plead would not be based upon the cancer cluster or some other date of awareness, but upon the "date of diagnosis." In contradiction to its argument in the Wise Motion to Dismiss, that the claims accrued on the date the Plaintiffs could have known of the invasion of their rights, P&W argued that "the clock on (Santiago's) claims started when she was injured" and for the first time claimed that cognizable injury was the diagnosis of her brain cancer rather than exposure. Doc. 328 at 6.

In a footnote, P&W argued that a discovery date was factually unavailable:

> Santiago unquestionably was aware of the potential existence of her claim shortly after she was diagnosed. Her parents were quoted in a December 2009 local media article speculating that Santiago's and others' brain tumors could be caused by environmental contamination. DE 322-04 (Kilpatrick Tech. Appx.) at 54."

Doc. 328 at 6.

The motion for judgment was heard on July 31, 2018, and focused on the issue of preemption and the statute of limitations issues alone.

That Transcript is filed as DE 369. As to the statute of limitations issues, Plaintiff Santiago noted that P&W's failure to state the defense in any case filed within four years of the cancer cluster designation, regardless of diagnosis, suggested that the Defendant was conceding that there was some sort of discovery doctrine at issue. The District Court stated that the other cases would not be considered at that time. DE 328 at 68:07-69:11.

On November 14, 2018, the Court granted the Motion for Summary Judgment in *Santiago*, based on the statute of limitations defense. DE 407 and DE 408.

### 8. *Motion to Amend the Answers to the Second Amended Complaints*

Two weeks after argument on the *Santiago* motion for summary judgment, on August 13, 2018, P&W filed motions to amend the defenses in ten of these cases pursuant to Fed. Rule of Civ. P. 15. P&W expressly contending that it purposely did not state the defenses in these cases before because Plaintiffs had alleged alternate theories of the case which may have precluded the defense, so it waited until that possibility was eclipsed. Doc. 370 to Doc. 380 - pg. 4.

For example, P&W argues that "it is now evident that Plaintiffs' sole theory is that Elizabeth Cotromano's tumor was caused by alleged exposure to radioactive

materials. Plaintiffs' primary expert on environmental contamination, Dr. Marco Kaltofen focuses on alleged radioactive contamination." Doc. 370 at 4 citing Kaltofen's affidavit, Doc. 326-4. Indeed, Kaltofen identifies the source of the radioactive exposure as the "residence's reliance on a fill provider that transported soil off site from UTC in similar time periods."

Plaintiffs opposed leave, arguing that while P&W could have plead this defense in the alternative, as it had in every other PAA defense, it chose not do so, evidencing a bad faith or dilatory delay such that prejudice should be assumed under a Rule 15 assessment. Moreover, P&W's decision to add the defense years after the scheduling order had elapsed and expert disclosures were provided caused actual prejudice including but not limited to the inability to amend the pleadings to avoid the defense, to refocus discovery, or to consider alternate expert disclosures. Doc. 381.

The District Court found that while P&W failed to demonstrate the good cause basis it would have needed to amend the scheduling order under Fed. R. Civ. P. 16, but that it was compelled to allow the defenses pursuant to *Grant v. Preferred Research, Inc.,* 885 F.2d 795 (11th Cir. 1989) because they were being raised before summary judgment in these cases and had been raised in a related case in summary judgment. Doc. 409. The order particularly struggled with P&W's admission that its delay was in fact strategic:

12

Furthermore, the Court rejects Defendant's assertion that it chose not to assert this affirmative defense until after "Plaintiffs [ ] settled on a theory that exposure to radioactive materials caused the tumors" (DE 370 at 5). Indeed, starting from when Defendant's first removed the case from state court in 2013, Defendant asserted that Plaintiffs' claims arose from the Price Anderson Act.
(Notice of Removal, DE 1, Case number 13-80929-CIV.) And, of course, nothing prevented Defendant from pleading in the alternative. Fed. R. Civ. P. 8(d).

### 9. Stay of the Proceedings

Upon the dismissal of the related *Santiago* case, all twenty personal injury cases were stayed while the appeal of her case was pending—including those not affected by a statute of limitations defense. DE 453, February 2019.

On April 9, 2019, the Santiago Appellants filed their Principal Brief, stating a single issue: whether a PAA claim could utilize the Federally Required Commencement Date provided by the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. 9658.

This Court determined that the Federally Required Commencement Date (FRCD) was not available in the Santiago case because the "the PAA also expressly states that the claims "arise under federal law." As such, the actions are not "based on state law" and the FRCD, 42 USC §9658, does not apply. *Pinares v. United Techs. Corp.*, 973 F.3d 1254, 1261 (11th Cir. 2020).

The opinion noted that *Santiago* did not oppose PAA preemption and did not argue for a state-based tolling provision: "Their primary argument, however, and the only one pursued in this appeal, relies on a discovery-tolling provision found in CERCLA" *Id.* at 1254, and "(T)hey point us to no Florida law that tolls the statute of limitations," *Id.* at 1259, and "We also know that the Santiagos brought their public liability action -- just like all plaintiffs bring all public liability actions -- exclusively under federal law" *Id.* at 1261.

### 10. The Lifting of the Stay and the Dispositive Motions at Issue.

On July 26, 2022, in a related action, a jury found that the parents of Cotromano, DeCarlo, Dunsford and Baratta (Featherston) proved that P&W failed to exercise reasonable care in its handling and disposal of radioactive materials. The jury also found that those plaintiffs did not prove that the materials were transported to sites in the Acreage as a result of P&W's reasonable care. 13-cv-80928-KAM Doc. 816. An appeal of the judgment resulting from that verdict is currently pending in this Court, Case No. 22-13024-JJ.  P&W then moved to lift the stay in these cases so that it could, in part, move for summary judgment on these cases. (Doc. 531.) P&W's statement of facts supporting its motion and the motion itself are filed at Doc. 538 and Doc. 539. The Motion is based entirely upon the pleadings and Plaintiffs' expert disclosures. Doc. 539. Plaintiffs statement in opposition and memorandum in

opposition are filed at Doc. 548 and 549. The Motion was heard on March 3, 2023.

Doc. 571. P&W's motion was granted on April 10, 2023, Doc. 554, on the basis

discussed herein.

## B. Relevant Facts.

The Summary Judgment at issue was based entirely upon the pleadings and the

allegations within them, as thoroughly reviewed above.

## C. Standard of Review

This Court reviews a district court's order granting summary judgment de novo.

See *Pinares v. United Techs. Corp*., 973 F.3d 1254 (11th Cir. 2020). This Court

reviews a district court's rulings on a motion to amend for an abuse of discretion.

*Oxford Furniture Companies, Inc. v. Drexel Heritage Furnishings, Inc.*, 984 F.2d

1118, 1124 (C.A.11 (Ala.), 1993).

Summary of Argument

For the purpose of this appeal, Plaintiffs focus on the application of Florida law as this Court has already determined that they are not to benefit from the Federally Required Commencement Date, a discovery date provided at 42 USC 9658. See *Pinares v. United Techs. Corp*., 973 F.3d 1254 (11th Cir. 2020) wherein this Court reviewed the wrongful death claim brought for Cynthia Santiago by her parents as explained in the Statement above.

As originally conceded by the Defendant, Florida law sets the date of accrual for such claims when the Plaintiff has "notice of the possible invasion of [his] legal rights," citing *Doe. v. Cutter Biological*, 813 F. Supp. 1547, 1555 (M.D. Fla. 1993 *aff'd,* 16 F. 3d 1231 (11th (Cir. 1994).  (Doc. 398-02 – pg. 15.)  No one denies the fact that Plaintiffs were not aware of the possible invasion of their rights when they were diagnosed with cancer. Yet the court uses the "diagnosis date" as the date to commence the running of the statute of limitations in these cases because that is when the district court considers Plaintiffs to have learned of the injury they are attempting to remedy.

But, at no time is "cancer" the alleged injury. The injury has always been a toxic exposure. (Doc. 564-03 – pg. 21-23 and Doc. 422 - pg. 6, 46, 52, 55, 58, 60). And even before Plaintiffs' experts identified the precise injurious action, supplying tainted products to Acreage fill providers, the operative complaints alleged that

16

"products leached into the environment by these Defendants" was the material issue. (Doc. 422 – pg. 36 and 51). That is, and has been, the claim.

For P&W to demonstrate entitlement to the defense of statute of limitations, it was required to establish two things: First, that Florida would allow the defense to be raised to the PAA claim; and Second, that the prescribed period of time associated with any such statute of limitations had run before the Plaintiffs filed their actions.

In order to do this, P&W needed to first establish when the cause of action for exposure to its tainted soil accrued. Florida Courts, and this Court while interpreting a cause of action for PCB contamination, have stated that the action accrues the moment a reasonable person in the injured party's situation knew or should have known that the acts complained of caused damage. See *Florida Power & Light Co. v. Allis Chalmers Corp.,* 85 F.3d 1514 (11th Cir. 1996).

P&W repeatedly claims that the claims accrued upon injury, but then fails to identify either the right injury or the date it occurred. The District Court's order does not dispute this failure, but instead determines to never settle upon an accrual date and to instead "set the clock" on the "date of diagnosis." (Doc. 554 at page 13 and FN 6.) That decision disregarded controlling precedent including authority cited by all parties holding that a "notice of the possible invasion of [his] legal rights" is the operative date of accrual.  This is the first issue which merits reversal.

The Second issue warranting reversal is that neither of the main authorities cited in support of supporting dismissal, *D.H. v. Adept Cmty. Servs., Inc.*, 217 So. 3d 1072, 1078 (Fla. Dist. Ct. App. 2017)) and *Larson & Larson,* P.A. v. TSE Indus., Inc., 22 So. 3d 36, 42 (Fla. 2009) (neither of which was a personal injury case), overcomes the precedent surrounding negligent exposure claims, or Florida's other claims that are more analogous to a PAA public liability claim—a claim for civil remedy under Chapter 376 Florida Statutes and the continuing trespass claim. If any statute of limitations applies to such claims, it commences only when P&W remedies the trespass. Often, as the District Court points out here, the inability to remedy the invasion means that no Statute of Limitations defense will ever stand. But that does not diminish the effect of the doctrine. Rather than consider that a defendant may never have a statute of limitations defense to such claims, this order effectively determines that these litigants never had a cause of action—and ignores both the allegations in the Complaints and the gravamen of relevant Florida law in order to do so.

But the most compelling justification for reversing the application of the "date of diagnosis" rule is that even when assessed solely as negligence claims, Florida law would apply the manifestation doctrine, whereby the claims accrue when a connection between the toxic exposure at issue and the disease is ascertainable.

Finally, P&W should never have been permitted to add the statute of limitations defense when it deliberately chose not to raise it. This delay not only failed to provide notice, it actively misled Plaintiffs by giving falsely assuring them that the defense would not be raised when the pleading deadline passed, as discovery focused their strategy, and when expert disclosures were made. The only way to remedy that prejudice would have been to set the cases back to before the pleading deadline had elapsed and to allow the parties to essentially relitigate years of work. It simply should not have occurred when considering this Court's precedent under Fed. R. Civ. Pro. Rules 8, 15, or 16.

## Argument

**I.    Claims Remedying an Injurious Exposure to Contaminated Soil Product are Not Precluded by P&W's Limitations Defense.**

If claimants do not know about any contamination when they are diagnosed, they do not know about the connection between the two, and moreover, they do not suspect that they have an exposure injury. Here, several victims of exposure were diagnosed with a disease before they knew about or suspected any bad acts— and like the FPL Plaintiff in *Florida Power & Light Co. v. Allis Chalmers Corp.,* 85 F.3d 1514 (11th Cir. 1996), they ought to be permitted the possibility of knowing about that contamination before a cause of action for the exposure that contamination caused is said to accrue.  Chapter 376 does not even permit the defense to a claim alleging that a defendant failed to abide by regulatory standard—which is essentially the state equivalent to a PAA claim. Moreover, when these claims are subject to a statute of limitations defense, they merit the implication of either the manifestation doctrine or the trespass doctrine.

### A. The District Court failed to identify the correct injury and chose an arbitrary date of accrual for these claims that is counter to Florida law.

Plaintiffs claim an ongoing and continuous injury—exposure to and trespass of radiation. P&W recognizes that a cause of action accrues upon the existence of a *cognizable* injury, but erroneously claims the injury is cancer only and calls for the

diagnosis of that cancer to be considered the date of accrual. (Doc 554 at 13). At the

hearing, Plaintiffs argued that neither cancer not its diagnosis is an injury—the act

complained of is the injury—such as is the case of car crashes which result in later

cervical herniation diagnoses, slip and falls resulting in knee fractures, batteries

resulting in concussion syndrome. Plaintiffs acknowledged the truth: "The day these

kids were injured is the day they came into contact with the nuclear material that the

defendant negligently handled." Doc. 574 at 56. The issue is not when the cancer was

cognizable, but when that exposure became cognizable.

The District Court responded in its order by admitting that while the date of

diagnosis is not an injury date, it cannot be called an accrual date. Recognizing that it

would be impossible to estimate when the Plaintiffs "contracted their disease," the

District Court determined to essentially create its own discovery date while still

considering cancer, and not the exposure, the injury:

> The Court is not holding that the date of diagnosis is the
> date the causes of action accrued. The accrual date would
> have been earlier when Plaintiffs first contracted the
> disease. That date, however, is not known. The date of
> diagnosis is the latest date that Plaintiffs would have
> become aware of their injury. It is for that reason that the
> date of diagnosis is being used as the date by which
> Plaintiffs were aware of the injury and the latest date from
> which the limitations period began to run.

(Doc. 554 at 13, FN 1.)

The District Court then follows this notation with a citation to a mutually referenced authority, but misconstrues that precedent:

> Both parties rely upon *Florida Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514 (11th Cir. 1996). There, the Eleventh Circuit applied Florida law; specifically, that a cause of action for limitations purposes accrues when the last element constituting the cause of action occurs and the plaintiff should have known or discovered the injury. Id. at 1519. Significantly, the Eleventh Circuit found that the fact that a plaintiff did not know the full extent of his injury or that the most substantial damages did not occur until a later date did not postpone the running of the statute of limitations. Here, Plaintiffs were legally damaged when they were diagnosed with cancer, an objective indication of the *latest* possible date of the accrual of Plaintiffs' alleged injuries.

In *Fla. Power & Light Co.*, 85 F.3d 1514, (11th Cir. 1996), an action to recover environmental clean-up costs, the action did not accrue as early as when FPL first acquired its contaminated transformers (which had begun as early as 1956), nor did it accrue later when FPL comprehended the scope of its financial damage. Instead, it accrued when FPL was first warned about the possibility of PCB contamination and then found that contamination when it tested for it. It just so happens that in that case FPL learned of the contamination and was able to confirm the source of that contamination via testing, before any other proceeding "diagnosed" the extent of its damage.

Here, Plaintiffs were not warned of any possible contamination until after cancer cluster was declared. Then, they were told by the agencies declaring the cluster that no contamination explained the phenomena could be found. Then, in 2013, Plaintiffs tested for and found contamination. Like FPL, their cause of action accrued when they found that contamination.

Perhaps because the latest information to be discovered by the FPL litigant was the extent of his damage, the order equates FPL's awareness of the extent of its injury with the 2013 testing that made Plaintiffs aware of the injurious exposure, which was also the latest thing that they learned. The diagnosis of cancer was, for these litigants, not a fact which provided them with any notice that their rights were invaded. The Plaintiffs diagnosis here was like the accounting FPL received when its costs were not indemnified. That is not, pursuant to this Court's rationale, the accrual date. While this Court did state that FPL's cause of action accrued "when the plaintiff should have known or discovered the injury,' it goes on to state that FPL discovered the injury when the contamination was discovered—not when the financial impact was diagnosed, because "(a) cause of action accrues under Florida law the moment the injured party or a reasonable person in the injured party's situation knew or should have known that the acts complained of caused damage." *Id*. at 1519.

**B. Latent injury claims accrue upon discovery of disease and its causal connection to an exposure event.**

There is simply no negligence case that supports the use of "the diagnosis date" outside the context of a manifestation doctrine setting. The Court rejected the manifestation doctrine because it erroneously determined that the doctrine is only used for negligence claims raised "in a product liability context" and that Plaintiffs claims do not allege exposure to any product. Both findings are wrong. How were Plaintiffs to state a claim for negligence in a products liability context other than to allege injury by exposure to P&W's products as they alleged? Moreover, if no discovery date applies to negligence claims, why would the court have used the "date the Plaintiffs became aware of the disease" as the date to start the limitations period?

1. Exposure claims warrant the manifestation doctrine.

As described in *Wilson v. Johns-Manville Sales Corp.*, 684 F.2d 111, 119 (D.C. Cir. 1982), and noted in *Eagle-Picher Indus., Inc. v. Cox,* 481 So. 2d 517, 523 (Fla. 3rd DCA 1985), the manifestation doctrine provides as follows:

> "[I]n situations involving the risk of manifestation of a latent disease, unlike the mine run of litigation, the evidentiary consideration counsels narrower delineation of the dimensions of a claim. **Key issues to be litigated in a latent disease case are the existence of the disease, its proximate cause, and the resultant damage. Evidence relating to these issues tends to develop, rather than disappear, as time passes.**"

24

P&W's motion for judgment admits that "the core allegation running through each Plaintiff's complaint is that their cancers were caused by exposure to radioactive materials that they allege originated from Pratt & Whitney's Palm Beach County facility."

Florida applies the manifestation doctrine to negligence claims regarding exposure to dangerous materials just as it would to a claim of faulty design. See *Pulmosan Safety Equip. Corp. v. Barnes*, 752 So. 2d 556, 557 (Fla. 2000) wherein the Florida Supreme Court held that the twelve-year statute of repose for products liability cases was exempted by the manifestation doctrine, because his **negligence** claims accrued upon knowledge of manifestation.

In *Pulmosan Safety Equip. Corp. v. Barnes*, 752 So. 2d 556 (Fla. 2000), the Florida Supreme Court determined it would be unconstitutional to preclude a latent injury claim by a statute of repose if the statute ran before the claimant discovered his cause of action. Significantly, the Court notes that Barnes "did not know that his lung problems were related to exposure" until 1992. As such, the Court determined that his cause of action did not accrue until Barnes knew of that connection, explaining that these cases are referred to as "creeping illness" cases:

> … the courts have held that the action accrues for purposes of the statute of limitations "'only when the accumulated effects of the deleterious substance manifest themselves [to the claimant],'" *Urie v. Thompson,* 337 U.S. 163, 170, 69 S.Ct. 1018, 1024, 93 L.Ed. 1282 (1949), **"in a way which**

25

**supplies some evidence of causal relationship to the manufactured product**...." *Karjala v. Johns-Manville Products Corp.,* 523 F.2d 155, 160–61 (8th Cir.1975).[5] At that point, it is said that the facts giving rise to the cause of action either [a] are actually known by the claimant, or [b] should have been known to the claimant with the exercise of due diligence. Admittedly, there is no magic moment when this point in time arrives as we often deal here with inherently debatable questions about which reasonable people may differ. For that reason, these matters are generally treated as fact questions for a jury to resolve, and therefore inappropriate for resolution on a summary judgment or directed verdict. *See generally* cases collected at n. 5, *supra* Copeland v. Armstrong Cork Co., 447 So. 2d 922, 926 (Fla.3[rd] DCA 1984), decision approved in part, quashed in part sub nom. Celotex Corp. v. Copeland, 471 So. 2d 533 (Fla. 1985)

In the present cases, not only were the Plaintiffs unaware of the possibility of any connection between their disease and any contamination until the declaration of the cancer cluster. As pointed out by P&W, the FDOH in fact concluded that the Acreage was safe for families to enjoy and found no evidence of widespread dumping. (DOC. 548 – pg. 1, ¶2). That explanation failed to find a source of the significant brain cancer clusters found by the FDOH. These cases were filed upon the knowledge that P&W related radioactive materials were in fact present in the Acreage. (DOC. 548 – pg. 4, ¶¶ 64-66.)

The District Court's determination that this constitutional analysis applies only to products claims and not to negligence claims is simply unsubstantiated. At no point

does the Order seriously consider that its ruling means these litigants never had the right to seek a remedy for an exposure that they could not have known occurred by the time the limitations period prescribed by the District Court expired.

2. The allegations include a product liability context when compared to the jury instructions Florida affords such claims.

According to Florida's jury instructions on product liability claims, including negligence and others, most of the various claims do not include privity between the victim and the entity the supplied or fabricated the product. They may be made against component suppliers, producers, distributors, or manufacturers. See *Fla. Std. Jury Instr. (Civ.)* 403, and particularly 403.2, 403.5, and 403.9.

Yet, P&W argued that unless they manufactured and sold the materials at issue to the Plaintiffs, the manifestation doctrine could not be considered because that doctrine is reserved for product liability claims as follows:

> My client sells jet engines to the federal government. and to commercial airlines. There is no product that we put into the market that they are claiming hurt them. They are claiming that we mishandled radioactive waste, which is an allegation we strongly dispute, and a jury has already rejected.

Doc. 574 at 67.

This is erroneous on three counts: First, a jury did find that P&W mishandled radioactive materials. (13-cv-80928-KAM Doc. 816.) Second, Plaintiffs in that case and in these cases do claim that P&W put its radioactive waste into the market as a

27

dirt product when they deliberately provided contaminated soils to fill transporters and a soil recycler[3]. Third, P&W implied a falsely narrow description of the several product liability actions afforded exposure victims in the state of Florida. The claims do not entail the use of the word product and they do not require that the victims be the customer of the defendant.

Indeed, the evidence in these cases includes classified ads selling "FILL FOR SALE" and "DIRT FOR SALE" citing the P&W address and sometimes, a P&W phone number. Doc. 368-42.

The claims fit squarely into Florida Model Jury instructions, Section 402 Products Liability, for either breach of implied warranty or negligence. Importantly, the instructions allow the Plaintiff to select the role of the defendant to include a "provider" and to describe the "product." The word "product" is not used. Here, P&W "supplied" or "distributed" "soil" for use as "recycled fill" and it was not suitable for that use:

> *403.2 Summary of Claims*:
>
> The claims [defenses] in this case are as follows. (Claimant) claims that the (describe product) [designed] [manufactured] [distributed] [imported] [sold] [or] [supplied] by (defendant) was defective and that the defect in the (describe product) caused [him] [her] harm.

---

3

[(Claimant) [also] claims that (defendant) was negligent in (describe alleged negligence), which caused [him] [her] to be injured by (the product).].

*403.5 Implied Warranty of Merchantability*
A product is defective if it is not reasonably fit for either the uses intended or the uses reasonably foreseeable by (defendant).

*403.9 Negligence.*
Negligence is the failure to use reasonable care, which is the care that a reasonably careful [designer] [manufacturer] [seller] [importer] [distributor] [supplier] would use under like circumstances. Negligence is doing something that a reasonably careful [designer] [manufacturer] [seller] [importer] [distributor] [supplier] would not do under like circumstances or failing to do something that a reasonably careful [designer] [manufacturer] [seller] [importer] [distributor] [supplier] would do under like circumstances.

The District Court, however, determined that Plaintiffs' claims were not "product liability claims" such as contemplated by section 95.031(b)(2) without comparing the facts of these cases to the way in which products claims are addressed in Sections 95.032 or 95.11, by the Florida jury instructions, or even to the facts stated within negligent exposure cases cited by the plaintiffs. Instead, The District Court referenced only to a vague inclination that these claims did not arise in "the products liability" setting because there is no "product" at issue. This is not what the complaints say, nor is the word "product" a requirement of the claim.

3. These cases are within the sort of claims described by the discovery rule set forth in Section 95.031(b) Florida Statutes and the manifestation exception to the statute of repose contained in 95.031(d).

While conceding that the manifestation doctrine applies to causes of action in cases the District Court termed "product liability for negligence" in *Elkins v. R.J. Reynolds Tobacco Co*., 65 F. Supp. 3d 1333 (M.D. Fla. 2014), *Carter v. Brown & Williamson Tobacco Corp*., 778 So. 2d 932 (Fla. 2001) *Pulmosan Safety Equip. Corp. v. Barnes*, 752 So. 2d 556 (Fla. 2000) and *Diamond v. E.R. Squibb & Sons, Inc*., 397 So. 2d 671 (Fla. 1981), the District Court determined that since these were all claims within "the products liability context," none of them applied to claims regarding the environmental context.[4]

To the extent the District Court determined these claims did not include allegations about an exposure to a "product" as that term is contemplated in the statutes regarding the date of accrual, that decision is simply not supported by the statutes themselves.

---

[4] Interestingly, at no time did the Court ask Plaintiffs or P&W, who had the burden of establishing its defense, where any authority existed to consider either the date of injury or the date of diagnosis arose within a negligence claim within the environmental context. Again, the only citation for the date of accrual within the context of negligence claims provided by P&W was Larson & Larson, P.A. v. TSE Indus., Inc., 22 So. 3d 36, 42 (Fla. 2009) and *Elkins v. R.J. Reynolds Tobacco Co*., 65 F. Supp. 3d 1333 (M.D. Fla. 2014). The Court cited only to *Larson & Larson, P.A*., a case regarding a legal malpractice claim. Without the manifestation doctrine, there is no justification for P&W"s suggestion.

Section 95.031(2)(b) provides a discovery date-based accrual date "for product liability under section 95.11(3)." Section 95.11(3) Florida Statutes, as applicable in 2013 and 2014, sets a statute of limitations period of four years for fourteen types of claims. None of those actions are identified as a "products liability claim." It is not as though Section 95.031 only applies to certain denominated subsections of claims listed in the statute of limitations provisions of section 95.11 because that section does not even mention the word "product."

Section 95.031(b)(2) provides that actions accrue "when the claimant knew about the facts giving rise to the cause of action," but also provides a repose period that precludes suit if the harm occurs more than twelve years after the product is "*delivered*" to an end user. *Deliveries* of component parts to the manufacturer of another product are not considered dates of distribution. 95.031(b)(2), emphasis added. 95.031(d) then includes the manifestation doctrine as an exception to the repose. As such, products cases which warrant a statutory discovery-based date of accrual and the manifestation doctrine exception to its date of repose do not, as P&W argued at the hearing, require privity of sale between the manufacturer of the mal-component of the dangerous materials and the exposure victim. They simply require use of some sort of product.

Notably, the date of repose and the date of discovery under Section 95.031(b)(2) apply to "any action for product liability, including a wrongful death action or any

31

other claim arising from personal injury or property damage caused by a product." Product is not defined.

4. <u>Section 768.81, Comparative Fault, does not define product liability claims in a manner that excludes these cases but instead supports considering the negligence claim as one in the product liability context.</u>

The District Court determined not to use the manifestation doctrine in these cases because "a products liability claim is one that seeks damages caused by the manufacture, design, formulation, installation, preparation or assembly of a *product,* regardless of whether the claim is based on a theory of negligence, strict liability, nuisance or similar theories," citing to Florida Statute § 768.81(d) with added emphasis added on the word product. This definition does not support the District Court's order but reinforces the error that the District Court made in dismissing these claims.

First, the definition of product liability actions under 768.81(d) has a limited application for purposes of the "enhanced injury" component off the comparative fault defense provisions set forth by the section. See Section 768.81(d) which goes on to state the "term includes an action alleging that injuries received by a claimant in an accident were greater than the injuries the claimant would have received but for a defective product" and see Section 768.81(b) which sets out a special provision for

"enhanced injury" cases and comparative fault. The point of 768.81(d) was not to define "products liability actions" in a manner so as to exclude this case.

Second, whatever the limited use of that section may be, it cannot be the exclusive means to differentiate environmental pollution claims from product liability claims any more than they should be differentiated from negligence claims. As Plaintiffs had informed the District Court at the hearing on the Motion for Summary Judgment, Section 768.81 served to abrogate joint and several liability within the context of **all** negligence claims, regardless of whether they included a product liability context or not, and the section is explicitly inapplicable to pollution: This section does not apply to any action brought by any person to recover actual economic damages resulting from pollution. Section 768.81(4).

Third, the section affirms what Plaintiffs argued—that regardless of whether it is a separate state claim entitled "Products Liability" or not, the PAA claim that is alleged by Plaintiffs, and described by their experts, details a negligence claim in the products liability setting. Frustratingly, the District Court then notes the statute in a manner that misconstrues the argument Plaintiffs made:

> Despite Plaintiffs' argument to the contrary, it does not matter whether a claim is labeled "negligence" or "product liability." See Florida Statute § 768.81(c) ("'Negligence action' means, without limitation, a civil action for damages based upon a theory of negligence, strict liability, products liability, professional malpractice whether couched in terms of contract or tort, or breach of warranty and like theories.

> The substance of an action, not conclusory terms used by a
> party, determines whether an action is a negligence action.")

Plaintiffs did not claim to make a "nominal" products liability claim. P&W argued that because no state claim was labeled "products liability," the claim could not be construed as such. Plaintiffs' claim is not "couched" as product liability claims; it is couched as a PAA claim and it contains allegations that, by virtue of their substance and the evidence supporting them, are raised in the product liability context.

### C. A Public Liability Claim is most akin to Florida's Chapter 376 civil remedy provisions, for which there is no statute of limitations defense.

The District Court found that the PAA preempts the strict liability aspect of Chapter 376 claims, and so the precedent surrounding Florida's Chapter 376 claims cannot be considered as one of the "substantive laws of the state" used to decide the limitations issue. Separately, the District Court determined that even if a Chapter 376 claim were to be used in the assessment, the District Court did not agree that Defendants facing Chapter 376 claims are not permitted to raise statute of limitations defenses. Again, this is erroneous as to both issues. Chapter 376 claims are the most analogous claim because they use a regulation-based standard of care and they do not afford statute of limitation defenses.

1. <u>The most analogous claim for a PAA Claim, alleging violations of federal regulations, is a claim under Section 376.313 Florida Statutes, alleging violation of Florida Environmental Regulation.</u>

As P&W's motion concedes, PAA preemption "applies with equal force to a statutory claim under § 376 as it does to Plaintiffs' common law claims for negligence and trespass." Yet, the District Court determined that a Chapter 376 claim is not the most analogous claim because it would not require demonstrating negligence and includes strict liability, which is preempted by the PAA. This ignores the fact that the standard of care of a negligence claim is also preempted by the PAA.

The order cited to *Roberts v. Florida Power & Light Co*., 146 F.3d 1305, (11th Cir. 1998) for the premise that a PAA plaintiff must show "an amount of radiation in excess of the maximum permissible amount allowed by federal regulation." That precedent, as noted herein, supports the argument that a PAA claim is the most analogous claims to a PAA claim.

Section 376.313 provides a civil remedy for environmental infractions; and Section 376.308 limits the defenses to those actions. Both provide that "in any such suit, it is not necessary for such person to plead or prove negligence in any form or manner. Such person need only plead and prove the fact of the prohibited discharge or other pollutive condition and that it has occurred." As such, Chapter 376 claims have

been referenced in precedent as including "strict liability" only because in place of the reasonable care standard, it uses a regulatory standard, and allows limited defenses.

This provision makes a Chapter 376 claim more like a PAA claim, not less so.

Thus, the standard of care in a PAA claim and a Chapter 376 claim are identical, excepting that a relevant federal regulation would take the place of the state one. See again *Roberts v. Fla. Power & Light Co*., 146 F.3d 1305, 1308 (11th Cir. 1998) citing *O'Conner v. Commonwealth Edison Co*., 13 F.3d 1090, 1105 (7th Cir.), cert. denied, 512 U.S. 1222, 114 S.Ct. 2711 (1994), *Nieman v. NLO, Inc*., 108 F.3d 1546 (6th Cir.1997); *In re TMI Litigation Cases Consol*. II, 940 F.2d 832 (3d Cir.1991): "virtually every federal court to consider the issue, including three circuit courts of appeals, have held that 'federal regulations must provide the sole measure of the defendants' duty in a public liability cause of action.'"

And in *Roberts*, The District Court did not rule that the strict liability claims brought by the FPL employee in that case were any more preempted than the negligence claims:

> Turning to the precise question presented by this case, virtually every federal court to consider the issue, including three circuit courts of appeals, have held that "federal regulations must provide the sole measure of the defendants' duty in a public liability cause of action." … This is because "any state duty would infringe upon pervasive federal regulation in the field of nuclear safety, and thus would conflict with federal law." TMI, 940 F.2d at 859. Moreover, the federal statutory scheme limits the liability of operators

of nuclear power facilities and provides for indemnification but does so against a stringent regulatory background…Consequently, we join those courts in holding that federal safety regulations conclusively establish the duty of care owed in a public liability action. As the plaintiffs have failed to allege that FPL breached its duty of care by exposing Bertram Roberts to an amount of radiation in excess of the maximum permissible amount allowed by federal regulation, they have failed to state causes of action for negligence, strict liability or loss of consortium. See, e.g., *McLellan v. Mississippi Power & Light Co.*, 545 F.2d 919 (5th Cir.1977) (en banc).

2. <u>Chapter 376 claims include claims for personal injuries caused by exposure to mishandled waste-products.</u>

In *Lieupo v. Simon's Trucking, Inc.*, 286 So. 3d 143 (Fla. 2019) the Florida Supreme Court acknowledged that Chapter 376 provides a civil remedy for claims that allege personal injuries caused by an environmental exposure resulting from a violation of state regulations and has limited defenses. In that case, the claimant was injured when the Defendant violated regulations relating to the transport of hazardous waste.

Here, Plaintiffs allege that they were injured when the Defendant violated regulations regarding the handling and disposal of radioactive waste. Their state claims were removed by P&W as PAA claims under 42 USC 2210 (Waiver of Defenses) and are now pending in this Court under 420 USC 2210(n), which like Chapter 376, provides limited defenses.

### 3. Section 376.308 does not afford a Statute of Limitations Defense.

In *Lieupo v. Simon's Trucking, Inc.*, 286 So. 3d 143, 146 (Fla. 2019), the

Florida Supreme Court receded from prior dicta, as stated in *Curd v. Mosaic*

*Fertilizer, LLC*, 39 So.3d 1216 (Fla. 2010), which had erroneously suggested that

376.313 claims did not include personal injury damages. Both note that the Statute

affords few defenses. Indeed, Section 376.308 provides specific variations of the sorts

of statutory defenses discussed elsewhere in this brief, such as comparative fault:

> the only other defenses of a person specified in subsection
> (1) are to plead and prove that the occurrence was solely
> the result of any of the following or any combination of the
> following:
> (a) An act of war;
> (b) An act of government, either state, federal, or local,
> unless the person claiming the defense is a governmental
> body, in which case the defense is available only by acts of
> other governmental bodies;
> (c) An act of God, which means only an unforeseeable act
> exclusively occasioned by the violence of nature without the
> interference of any human agency; or
> (d) An act or omission of a third party, other than an
> employee or agent of the defendant or other than one whose
> act or omission occurs in connection with a contractual
> relationship existing, directly or indirectly, with the
> defendant, except when the sole contractual arrangement
> arises from a published tariff and acceptance for carriage by
> a common carrier or by rail, and the defendant establishes by
> a preponderance of the evidence that:
> 1. The defendant exercised due care with respect to the
> pollutant concerned, taking into consideration the
> characteristics of such pollutant, in light of all relevant facts
> and circumstances.

2.    The defendant took precautions against any foreseeable acts or omissions of any such third party and against the consequences that could foreseeably result from such acts or omissions.

Section 376.308 Florida Statutes.

In a case that was pending in the Middle District of Florida, *Jerue v. Drummond Co., Inc*., No. 8:17-CV-587-T-17AEP, 2017 WL 10876737, at *6/LEXIS 223245, at *19-20 (M.D. Fla. Aug. 17, 2017), that district court found that there was no statute of limitations defense to the claims regarding the release of soil sludge that contained radium-226 and other radioactive materials:

> Section 376.308 of the Florida Statutes does not contain a statute of limitations or statute of repose defense to a claim brought pursuant to Chapter 376 of the Florida Statutes. See Fla. Stat., 376.308(2)(a) --(d). As a result, it is reasonable to infer that the Florida Legislature "deliberately omitted" any statute of limitations or statute of repose defense to a claim under Chapter 376 of the Florida Statutes. Consequently, the Plaintiffs' claims under Chapter 376 of the Florida Statutes are not barred by any statutes of limitations or statutes of repose.

This District Court disagreed with the rationale set forth in *Jerue,* however, because it assumes that strictly construing Section 376.308 would obviate traditional common law defenses as well the statute of limitations defense, such as *res judicata.*

This is non-sequitur. The statute of limitations defense is a statutory defense. The defenses that the District Court fears would be obviated by strictly construing the

rather clear and unambiguous language of 376.308 are not. Chapter 376.308 modifies the statutory defense that the legislature chose to keep—the fault of third parties. It is reasonable to assume, as the district court did in *Jerue v. Drummond Co., Inc,* that the legislature would have included the statutory defense of statute of limitations had it though it was appropriate, particularly when it clearly tailored other statutory defenses such as comparative fault of third parties.

The District Court cited to *General Dynamics Corp. v. Brottem*, 53 So.3d 334, 336 (Fla. 5th DCA, 2010) which reversed a District Court's determination that Section 376.308 did not permit the immunity defense provided by Florida Workers' Compensation Act. In dicta, the Fifth District notes that the claimant there conceded that despite the clear language of Chapter 376.308, a Chapter 376 claim was amenable to defenses that were not listed in Section 376.308, such as *res judicata* and a statute of limitations defense. The Fifth District reasoned that worker-compensation immunity defenses, like *res judicata,* are meant to extinguish litigation before it begins. The statute of limitations is not such an immunity defense—at least not here.

### D. The Continuing Trespass Doctrine Ought to Apply.

The District Court found that since Section 376.308 does not provide for the defense of statute of limitations in the list of "sole defenses" available, that a statute of limitations should be assessed under 95.11(3)(f) which provides a four-year statute

of limitations for an action founded on a statutory liability. Indeed, in the limited instances where Florida Courts have considered a statute of limitations defense in the context of a Chapter 376 claim, they have used the four years statute of limitations provided by 95.11(3)(f), but they do so under the doctrine of continuing trespass, wherein statute of limitations does not begin to run until the harm is abated See *State, Dept. of Environmental Protection v. Fleet Credit Corp*., 691 So.2d 512, 514 (Fla. App. 4 Dist.,1997):

> The statute of limitations in environmental contexts where there is a continuing invasion of rights does not begin to run until the wrongful invasion of rights that constitutes the violation ceases. *United States v. Reaves,* 923 F.Supp. 1530 (M.D.Fla.1996). Were this not the case, then the Legislature's stated intention to abate pollution that threatens human, animal, aquatic, and plant life as well as property interests would be wholly frustrated. § 403.021(5)– (6), Fla.Stat. (1995).

Applying § 95.11(3)(f), it's undisputed that the limitations period for pollution does not run until the harm is abated. See also *State of Fla. Dep't of Envtl. Reg. v. CTL Distribution, Inc*., 715 So. 2d 262, 264 (Fla. 3d DCA 1998).

Moreover, Plaintiffs have alleged a claim for trespass itself, and neither the Court, nor P&W, sets forth a date upon which the trespass was cognizable other than what Plaintiffs have proffered in the manifestation doctrine discussion above.

## II.    P&W Should Not Have Been Afforded Leave to Amend its Defenses

P&W expressly admitted that it sought to add the statute of limitations defense only when it was "evident that Plaintiffs' sole theory" would be susceptible to the defense. (Doc. 370 – Doc. 380). Citing the demonstrable lack of good cause evident in that tactic, Plaintiffs opposed leave with three arguments: P&W failed to demonstrate how its "wait and see" game of "gotcha" was the sort of exceptional circumstance that warranted an untimely amendment under Rule 15(a), or a departure from the scheduling order under Rule 16(b), or an exception to the rule that an unpled defense is a waived defense under Rule 8. The District Court afforded leave despite noting that P&W's stated "good cause" basis was unjustified. Meanwhile, Plaintiffs claims of prejudice were disregarded by the court on an arbitrary basis.

### A. Defendant's failure to establish good cause for disturbing the elapsed pleading deadline under Rule 16(b necessitated a denial of its motion.

The District Court found that P&W did not demonstrate good cause, and thus, if the standard to be applied were the standard used to determine whether amendment should be allowed under Rule 16, the District Court noted that P&W would not be awarded leave to amend: "Given that diligence, not lack of prejudice, is the "touchstone" of the Rule 16(b) inquiry, the Court finds that Defendant has failed to make the threshold showing of diligence… As such, Defendant has not met the standard for leave to amend under Rule 16(b)." Doc. 409 - pg. 3.

42

This should have been the only standard the Court applied. Indeed, this Court has used the Rule 15 analysis as the only analysis when an amendment by a Plaintiff, sought under Fed. R. Civ. Pro Rule 16's liberal allowance for amendments, violated years passed scheduling order. There, the late assertion of a new claim would have avoided the statute of limitations defense, one which unlike P&W's defense, was pled from the outset. See *Hargett v. Valley Federal Sav. Bank*, 60 F.3d 754, 761 (C.A.11 (Ala.), 1995) citing Nevels *v. Ford Motor Co.,* 439 F.2d 251, 257 (5th Cir.1971) (wherein the Court stated that generally leave to file amendments should be freely given; however, "amendments should be tendered no later than the time of pretrial unless compelling reasons why this could not have been done are presented". It is nothing if not arbitrary that a Defendant can add the defense of statute of limitations after litigation has already determined the scope of the causes of action and no new facts have prompted the defense, and yet a Plaintiff cannot avoid the defense by raising a cause of action under the same circumstance.

The District Court noted that pursuant to Eleventh Circuit precedent, when assessing motions to amend a pleading after the deadline has passed, this Court has provided clear direction. A party seeking leave to amend a deadline designated in a scheduling order, such as a deadline for the amendment of pleadings, must demonstrate "good cause" under rule 16(b) of the Federal Rules of Civil Procedure. See *Sosa v. Airprint Sys*., 133 F.3d 1417, 1418 n.2 (11th Cir. 1998) ("[W]hen a

motion to amend is filed after a scheduling order deadline, Rule 16 is the proper guide for determining whether a party's delay may be excused."); Fed. R. Civ. P. 16(b)(4). ("A schedule may be modified only for good cause and with the judge's consent."). In *Sosa*, the Eleventh Circuit upheld a district court's denial of the plaintiff's motion to amend her complaint because the plaintiff's failure to comply with the court's scheduling order resulted from a "lack of diligence in pursuing her claim." 133 F.3d at 1419.

Since Plaintiffs would not ordinarily be afforded leave to amend claims to add a claim that would have avoided the defense if it had been timely raised, the Defendant ought not to have been allowed to raise the defense when the pleading deadline had passed without showing at least some good cause.

### B. The late amendment prejudiced the Plaintiffs and was not justified under Rule 15 because it showed bad faith and dilatory motive.

The District Court allowed the amendment without examining Plaintiffs' Rule 15 Argument. Simply put, this was not just a case where the lack of good cause demonstrated a mere indolence. P&W was diligent, and it had a purpose—to sabotage the Plaintiffs. It chose to wait until Plaintiffs would have no other option. And that deliberate scheme had its intended, or at least foreseeably consequential, effect—it prejudiced the Plaintiffs. As such, this is not just an issue where delay created a simple lack of notice, it gave Plaintiffs a false notice that the defense would not be

raised in most cases and in the limited instance wherein it was raised, it could be avoided based upon the facts and the imposition of a discovery rule.

Under this Court's precedent, such an action cannot be permitted because the amendment violates Rule 16. Leave to amend a pleading, more than 20 days after its service and where the opposing party does not consent, should be given only "when justice so requires." FRCP 16(a). Applying that standard, the Eleventh Circuit follows the guidance set forth in *Foman v. Davis*, 371 U.S. 178 (1962). See, e.g., *Hargett v. Valley Fed. Sav. Bank*, 60 F.3d 754, 761 (11th Cir. 1995) citing *Foman*, 371 U.S. at 182: Foman articulates a partial list of reasons for denying leave to amend:

> (i) undue delay,
> (ii) bad faith or dilatory motive on the part of the movant,
> (iii) repeated failure to cure deficiencies by amendments previously allowed,
> (iv) undue prejudice to the opposing party, or
> (v) futility of the amendment.

While *Foman* identifies delay as an independent ground for denying leave to amend, Plaintiffs acknowledge that some courts have concluded delay alone is an insufficient basis to deny an amendment, without some prejudice to the non-moving party. See *Smith v. Duff & Phelps, Inc.*, 5 F.3d 488, 493 (11th Cir. 1993). On the other hand, the delay alone may suffice if the movant offers no explanation. See *Oxford Furniture Cos. v. Drexel Heritage Furnishings*, 984 F.2d 1118, 1124 (11th Cir. 1993) ("Drexel gave no reason for waiting to raise the statute of frauds defense.").

For the general leave-to-amend analysis under Rule 15, many courts have recognized an inverse relationship between the length of the delay and the degree of prejudice to the nonmovant. Sufficient prejudice to preclude the amendment may consist in adding complication to the proceedings. See *Jones v. Childers*, 18 F.3d 899, 909 (11th Cir. 1994) (affirming denial of motion as untimely where defendants' "attempt to add—nearly four years after the filing of the original answer, after the completion of discovery, and after the trial was set—a host of new affirmative defenses which would have further complicated an already complex case and likely delayed the trial by necessitating the reopening of discovery." That is precisely the scenario here.

The motion to raise the defense years later than when the complaints were answered, should have been denied because the only way to properly fix the remedy would be to afford all new discovery, expert disclosures, and amendment deadlines. And separately from whether the delay caused prejudice, the District Court never considered whether the delay exhibited bad faith or dilatory motive on the part of the movant. In fact, the order rejects P&W's admission that chose to wait for Plaintiffs to isolate upon a single theory because that was not, as P&W proffered it be, good cause, and thereby evaded considering the dilatory motive clearly expressed by the intention of waiting until application of the defense would seem inevitable before it chose to

add it. A move which not only confesses some degree of bad faith, but prejudice to the Plaintiffs now boxed into a single theory among their alternate claims.

The District Court summarily rejected the notion that Plaintiffs would have amended their complaints to include a claim more expressly based upon the products at issue in the experts' disclosures, reasoning that if it was not pled in the Santiago matter, it would not have been pled in these matters. This is wrong on three bases:

- First, the District Court's implication was that in order to demonstrate prejudice, the Plaintiffs in another case must have been able to cure it on the eve of a summary judgment motion. If the prejudice can be cured, then denying a motion to amend under Rule 15 is hardly justified. It is only when the prejudice is too far gone and too far afield that "without having to litigate the case all over again," the prejudice cannot be avoided that a motion to amend under rule 15 must be denied. See again *Jones v. Childers*, 18 F.3d 899, 909 (11th Cir. 1994).

- Second, the fact that P&W did not raised the defenses in these cases clearly implied that a tolling under any Florida based tolling doctrines would apply. As such there was little reason for Santiago to try to avoid a legal defense in any other manner than to assert the fact pattern for that case that merited such an exception that was included in her wrongful death complaint.

- Third, what Santiago could or did do was irrelevant to these cases, just as what P&W did in these cases was considered irrelevant when the Santiago Plaintiffs attempted to cite P&W's pleading practice in these cases to explain her decisions in that case. But moreover, as noted in Plaintiffs' opposition to the present motions for summary judgment, the calculation in that case is entirely different. Santiago died in the pendency of the claim. She filed her claim within months of turning 18, on a date that followed both her diagnosis and her parents' discussion of that diagnosis and the cluster with press by more than four years. The question of how and whether her parents, now as personal representatives, could ever prove that Santiago filed her claim within four years of any notice of an invasion of her rights was simply a different matter. In appeal, they relied exclusively on the FRCD, which uses the age of majority as an accrual date.

## C. This Defendant should not be afforded the notice exception that is afforded defendants who still provide notice under Rule 8.

Because no new set of facts prompted P&W's request to add a defense it did not plead at the outset, P&W needed to demonstrate why it should be afforded an exception to the requirement that all such affirmative defenses be pled at the outset as stated in Fed R. Civ. P. 8.

P&W did not explain that it had simply made a mistake and failed to include a defense that all parties knew was on the table, as was the issue in *Grant v. Preferred Research, Inc*., 885 F.2d 795, 797-98 (11th Cir. 1989). Instead, they admitted that they waited until the litigation had proceeded in manner that they determined finally made the defense unavoidable before they asserted it.

And yet, they argued that despite this admission, Plaintiffs somehow had effective notice of the defense. P&W argued that since they were asserting the motion on the eve of dispositive motions in the case, that there was due notice under the precedent this Court set out in *Grant v. Preferred Research, Inc*., 885 F.2d 795, 797-98 (11th Cir. 1989).

However, *Grant* is inapposite here.

In *Grant*, this Court affirmed a late assertion of the defense because by the time the Grant plaintiffs had notice of the defendant's reliance on the defense, it still had an opportunity to rebut the defense at trial. And before the defendant in that case attempted to assert the defense in a motion for summary judgment, they never had provided any sort of counter-notice such as is at issue here. Indeed, in *Grant,* the failure to plead the defense seems to be an oversight caught only after trial, and not the result of a purposeful decision to limit or avoid the use of the defense that was exhibited over years as it was here.

In *Grant*, this Court determined that since the plaintiff received notice of the affirmative defense by some means other than pleadings, "the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice," citing *Hassan v. U.S. Postal Service*, 842 F.2d 260, 263 (11th Cir.1988) for the proposition that if the plaintiff is afforded the ability to rebut the defense, the technical failure to plead the defense in a case where all parties knew it was an issue did not justify striking the defense.

The defendant in *Grant* first raised the defense in a motion for summary judgment, which it lost, and then the parties proceeded to trial. At trial, the jury found for the plaintiff, but in a manner that was consistent with a determination that the date of accrual occurred more than two years before the action was filed. Because the *Grant* plaintiff was aware of the defense by the time the case went to trial and had the burden to prove that he was unaware of facts that would have led a reasonable person to suspect fraud when he went to trial, the defense resulted in a defense judgment. *Grant v. Preferred Research, Inc*., 885 F.2d 795, 799 (C.A.11 (Ala.),1989) In that case, the plaintiff "was fully aware that [the defendant] intended to rely on a statute of limitations defense" and "[did] not assert any prejudice from the lateness of the pleading." Id at 798. Nor could it have.

As discussed in *Grant*, ordinarily the failure to state the affirmative defense of statute of limitations results in the waiver of that defense. See *American Nat. Bank of*

*Jacksonville v. Federal Deposit Ins. Corp.*, 710 F.2d 1528, 1537 (11th Cir.1983) affirmative defense of statute of limitations is waived if not pleaded. However, as this Court noted, "(t)he Supreme Court has held that the purpose of Rule 8(c) is to give the opposing party notice of the affirmative defense and a chance to rebut it. *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313 (1971). There was no notice here. And the general rule—that unpled defenses under Rule 8(c) are waived—remains intact today. See *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1239 (11th Cir. 2010), and *Keybank Nat'l Ass'n v. Hamrick*, 576 Fed. App'x. 884, 888 (11th Cir. 2014).

## CONCLUSION

This Court must find that the statute of limitations defense claimed by P&W does not apply to these causes of action—either because the defense is not available for defendants alleged to liable for violations of environmental regulations, because such claims do not accrue until Plaintiffs had notice of the wrongful invasion of their rights and that invasion is remedied, or because P&W waived the defense.

Dated this 10th day of August, 2023.

Respectfully submitted,

/s Mara R. P. Hatfield
*Mara R. P. Hatfield*
Florida Bar No.: 37053
SEARCY DENNEY SCAROLA BARNHART & SHIPLEY, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, Florida 3340
Phone: (561) 686-630
Fax:   (561) 383-9539
 hatfieldteam@searcylaw.com
*Counsel for  Plaintiffs*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) as the brief contains 12,217 words, excluding those parts exempted by 11th Cir. Local R. 32-4.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) as this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

s Mara R. P. Hatfield
*Mara R. P. Hatfield*
Florida Bar No.: 37053
SEARCY DENNEY SCAROLA BARNHART & SHIPLEY, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, Florida 3340
Phone: (561) 686-630
Fax:    (561) 383-9539
 hatfieldteam@searcylaw.com
*Counsel for   Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2023 copies of the brief were dispatched for delivery to the Clerk's Office of the United States Court of Appeals for the Eleventh Circuit by third-party commercial carrier for overnight delivery at the following address:

> David J. Smith
> Clerk of Court
> U.S. Court of Appeals for the 11th
> Circuit 56 Forsyth St., N.W.
> Atlanta, Georgia 30303

On this same date, a copy of the brief was served on the following by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing:

*/s/* Mara R. P. Hatfield *Mara R. P. Hatfield* Florida Bar
No.: 37053
SEARCY DENNEY SCAROLA BARNHART & SHIPLEY, P.A.
2139 Palm Beach Lakes
Boulevard West Palm Beach,
Florida 3340 Phone: (561) 686-630
Fax:  (561) 383-9539
 hatfieldteam@searcylaw.com
*Counsel for  Plaintiffs-Appellants*

1