# UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT
## Case No. 23-11585-D

RICHARD COTROMANO, et al.,

    Plaintiffs/Appellants,

vs.

RAYTHEON TECHNOLOGIES
CORP., d/b/a Pratt & Whitney,

    Defendant/Appellee.

_____/

District Court Docket Nos.:
9:10-cv-80883 (KAM) (Lead),
including:
13-cv-80929 (Cotromano)
13-cv-80930 (DeCarlo)
13-cv-80932 (Dunsford)
13-cv-80931 (Newfield)
13-cv-81019 (Thibodeau)
13-cv-81044 (Cifrodella)
13-cv-81136 (Lozada)
13-cv-81179 (Florez)
13-cv-81180 (Peart)
14-cv-80655 (Wise)
17-cv-80545 (Featherston)

Appeal from the United States District Court
For the Southern District of Florida, West Palm Beach Division

## APPELLEE'S BRIEF

Jack J. Aiello
Gregor J. Schwinghammer, Jr.
GUNSTER, YOAKLEY
 & STEWART, P.A.
777 South Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
Telephone: (561) 655-1980

Andrew C. MacNally
Abby M. Mollen
Daniel R. McElroy
William D. Gohl
BARTLIT BECK LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60654
Telephone: (312) 494-4400

*Counsel for Appellee*

*Richard Cotromano v. Raytheon Technologies Corp.*
Case No. 23-11585-D
CIP - 1 of 4

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

In compliance with Local Rule 26.1-1, Appellee certifies that the following is a complete list of the trial judges, all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party.

Adinolfe, Joseph, Consolidated Litigant, separate claims

Aiello, Jack J., Appellate Counsel for Defendant/Appellee

Bartlit Beck LLP, Appellate Counsel for Defendant/Appellee

Cifrodella, Thomas, Appellant

Cotromano, Bethany, Appellant

Cotromano, Richard, Appellant

Craig, Debora, Related Litigant

Craig, Raymond, Related Litigant

Creed & Gowdy, P.A., Consolidated Litigant's Counsel

DeCarlo, Kristina M., Appellant

DeCarlo, Frank, Appellant

DeCarlo, Paulette, Appellant

*Richard Cotromano v. Raytheon Technologies Corp.*
Case No. 23-11585-D
CIP - 2 of 4

Dunsford, Gregory, Appellant

Dunsford, Jennifer, Appellant

Ekstrand, Alyson, Related Litigant

Ekstrand, Guy, Related Litigant

Featherston, Joyce, Appellant

Florez, Fedra M., Appellant

Gallagher, Sean W., Counsel for Defendant/Appellee

Gayahpersad, Reynold, Related Litigant

Gayahpersad, Teri, Related Litigant

Gdanski, Jonathan R., Consolidated Litigant's Counsel

Genck, Jill M., Related Litigant

Genck, Jonathan C., Related Litigant

Gohl, William D., Appellate Counsel for Defendant/Appellee

Gowdy, Bryan S., Consolidated Litigant's Counsel

Groden, Alexander L., Counsel for Defendant/Appellee

Guarin, Carolina, Related Litigant

Gunster, Yoakley & Stewart, P.A., Appellate Counsel for Defendant/Appellee

Haberman, Jeffrey L., Consolidated Litigant's Counsel

Hammer, Steven J., Consolidated Litigant's Counsel

*Richard Cotromano v. Raytheon Technologies Corp.*
Case No. 23-11585-D
CIP - 3 of 4

Hatfield, Mara R. P., Counsel for Appellants

Latham, Darren R., Appellate Counsel for Defendant/Appellee in related case

Law Offices of Craig R. Zobel, P.A., Consolidated Litigant's Counsel

Law Offices of Steven J. Hammer, P.A., Consolidated Litigant's Counsel

Lozada, Ida, Appellant

Lozada, Jesus, Appellant

MacNally, Andrew C., Appellate Counsel for Defendant/Appellee

Marra, Honorable Kenneth A., Trial Judge

McElroy, Daniel R., Appellate Counsel for Defendant/Appellee

Mollen, Abby M., Appellate Counsel for Defendant/Appellee

Newfield, Jessica, Appellant

Patrie, Kimberly, Related Litigant

Peart, Roderick, Appellant

Peart, Yvette, Appellant

Pratt & Whitney, Unincorporated division of Defendant/Appellee

RTX Corporation, d/b/a Pratt & Whitney (Stock Ticker: NYSE: RTX), and f/k/a
United Technologies Corporation, Defendant-Appellee

Scarola, Jack, Counsel for all Plaintiffs/Appellants

Schlesinger Law Offices, P.A., Consolidated Litigant's Counsel

*Richard Cotromano v. Raytheon Technologies Corp.*
No. 23-11585-D
CIP - 4 of 4

Schlesinger, Scott, P., Consolidated Litigant's Counsel

Schwinghammer, Jr., Gregor J., Appellate Counsel for Defendant/Appellee

Searcy Denney Scarola Barnhart & Shipley, P.A., Counsel for Plaintiffs/Appellants

Thibodeau, Luz, Appellant

Thibodeau, Steven, Appellant

Tvenstrup, Kevin R., Related Litigant

Wise, Ronald G., Deceased, Estate of, Appellant

Zobel, Craig R., Consolidated Litigant's Counsel

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

This appeal challenges two rulings below. In the first ruling, the District Court granted summary judgment for Defendant-Appellee Pratt & Whitney based on a straightforward application of Florida law, guided by this Court's prior ruling in a closely related case, *Pinares v. United Technologies Corp.* (*Santiago*), 973 F.3d 1254 (11th Cir. 2020).[1] In the second ruling, the District Court granted Pratt & Whitney leave to amend its answers, relying on long-established Eleventh Circuit precedent. This Court reviews that ruling only for abuse of discretion. Both of the District Court's rulings were thoroughly reasoned and well supported by the law and record. Oral argument is therefore unnecessary.

---

[1] For clarity and ease of reference, Pratt & Whitney cites to this opinion as "*Santiago*" throughout this brief.

i

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ............................................................ CIP-1

STATEMENT REGARDING ORAL ARGUMENT............................................. i

STATEMENT OF JURISDICTION ................................................................ x

STATEMENT OF THE ISSUES.................................................................... 1

STATEMENT OF THE CASE...................................................................... 2

    I.      PRATT & WHITNEY AND "THE ACREAGE" ............................... 2

    II.     PLAINTIFFS' CLAIMS ....................................................... 2

    III.    PLAINTIFFS' EXPERT DISCLOSURES ........................................ 5

    IV.    PRATT & WHITNEY'S MOTIONS TO AMEND ............................. 6

    V.     *SANTIAGO* ..................................................................... 7

    VI.    PLAINTIFFS' MOTION TO STAY AND SUBSEQUENT
           PROCEEDINGS ................................................................. 8

SUMMARY OF THE ARGUMENT .......................................................... 10

ARGUMENT ........................................................................................ 14

    I.      FLORIDA'S FOUR-YEAR STATUTE OF LIMITATIONS
           BARS PLAINTIFFS' CLAIMS........................................... 14

          A.     Under Florida Law, A Four-Year Statute Of Limitations
                 Applies To Plaintiffs' Claims .................................... 15

          B.     The Four-Year Statute of Limitations Began To Run No
                 Later Than Plaintiffs' Cancer Diagnoses................................. 16

C.  Plaintiffs Filed Suit More Than Four Years After Their Cancer Diagnoses, And Their Claims Are Therefore Time-Barred ...............................................................................17

II.  PLAINTIFFS' ARGUMENTS AGAINST DIAGNOSIS AS THE ACCRUAL DATE ARE FLAWED..........................................17

A.  The District Court Correctly Identified Plaintiffs' Brain Cancers As Their Injury And Their Diagnoses As The Accrual Date ................................................................................19

1.  Each Plaintiff's Alleged Injury Is Brain Cancer, Not "Exposure"................................................................20

2.  Plaintiffs' Claims Accrued No Later Than When They Knew They Had Brain Cancer ..............................21

3.  Any Error In Using Diagnosis As The Accrual Date Was Harmless ........................................................23

B.  The District Court Correctly Determined That Plaintiffs' Claims Do Not Sound In Products Liability.............................24

1.  Plaintiffs Repeatedly Admitted Below That They Have *Not* Asserted Product Liability Claims ................24

2.  Consistent With Their Admissions, Plaintiffs Do Not Allege Product Liability Claims..............................26

C.  The "Manifestation Doctrine" Does Not Postpone Accrual Of Plaintiffs' Claims ..................................................30

1.  Florida Law Limits The Delayed Accrual That Plaintiffs Seek To Product Liability Cases....................31

2.     There Is No Basis For Delayed Accrual Beyond Florida's Statutory Framework.......................................33

III.    PLAINTIFFS' OTHER EFFORTS TO AVOID THE FOUR-YEAR LIMITATIONS PERIOD ALSO FAIL ................................34

A.    Florida Statute § 376 Cannot Provide The Relevant Limitations Period For Plaintiffs' Claims, And Even If It Could, The Limitations Period Would Be Four Years ............35

1.     Section 376 Claims Are Fundamentally Inconsistent With The Price-Anderson Act...................35

2.     A Four-Year Statute Of Limitations Applies To § 376 Claims ................................................................40

B.    The "Continuing Trespass" Or "Continuing Tort" Doctrine Does Not Apply ........................................42

IV.    THE DISTRICT COURT PROPERLY EXERCISED ITS DISCRETION IN PERMITTING PRATT & WHITNEY TO ASSERT THE STATUTE OF LIMITATIONS DEFENSE..............44

A.    Plaintiffs Had Notice Of The Statute Of Limitations Defense And Failed To Show Prejudice...................................45

B.    Pratt & Whitney Did Not Need To Demonstrate Good Cause To Assert The Statute Of Limitations, Yet Did So Nevertheless ................................................................49

C.    Any Error In Permitting Pratt & Whitney To Assert The Statute Of Limitations Was Harmless ........................50

CONCLUSION ........................................................................54

CERTIFICATE OF COMPLIANCE ........................................55

CERTIFICATE OF SERVICE ................................................56

iv

# TABLE OF CITATIONS

## Cases

*Acuna v. Brown & Root Inc.*,
200 F.3d 335 (5th Cir. 2000)...........................................................xi, xii

*Aponte v. Brown & Brown of Fla.*,
806 F. App'x 824 (11th Cir. 2020) ............................................... 44, 46

*Aramark Unif. & Career Apparel, Inc. v. Easton*,
894 So. 2d 20 (Fla. 2004)............................................................. 36, 37

*Bohrmann v. Me. Yankee Atomic Power Co.*,
926 F. Supp. 211 (D. Me. 1996) .........................................................38

*Bryant v. Jones*,
575 F.3d 1281 (11th Cir. 2009) .........................................................42

*Cal. Fin., LLC v. Perdido Land Dev. Co.*,
303 F. Supp. 3d 1306 (M.D. Fla. 2017)...............................................41

*Chapman v. Procter & Gamble Distrib., LLC*,
766 F.3d 1296 (11th Cir. 2014) ..........................................................33

*City of Metropolis v. Honeywell Int'l*,
No. 21-CV-860-SMY, 2022 WL 17488478
(S.D. Ill. Dec. 7, 2022) ......................................................................38

*Clark v. Ashland Inc.*,
No. 2:13–cv–794–FtM–29DNF, 2015 WL 1470657
(M.D. Fla. Mar. 31, 2015)..................................................................41

*Corcoran v. N.Y. Power Auth.*,
202 F.3d 530 (2d Cir. 1999)..............................................................15

*Davis v. Monahan*,
832 So. 2d 708 (Fla. 2002)................................................................17

*Doe v. Cutter Biological*,
813 F. Supp. 1547 (M.D. Fla. 1993)..................................................32

*Eagle-Picher Indus., Inc. v. Cox*,
    481 So. 2d 517 (Fla. Dist. Ct. App. 1986) ............................................................32

*Edwards v. Fulton Cty.*,
    509 F. App'x 882 (11th Cir. 2013) .......................................................46

*Elkins v. R.J. Reynolds Tobacco Co.*,
    65 F. Supp. 3d 1333 (M.D. Fla. 2014)....................................................15

*Estate of Ware v. Hosp. of the Univ. of Penn.*,
    871 F.3d 273 (3d Cir. 2017)....................................................... xi

*Fla. Dep't of Env't Prot. v. Fleet Credit Corp.*,
    691 So. 2d 512 (Fla. Dist. Ct. App. 1997) ...............................................43

*Fla. Dep't of Env't Regul. v. CTL Distribution, Inc.*,
    715 So. 2d 262 (Fla. Dist. Ct. App. 1998) ...............................................43

*Fla. Power & Light Co. v. Allis Chalmers Corp.*,
    85 F.3d 1514 (11th Cir. 1996) ..................................................... 21, 22

*Gen. Dynamics Corp. v. Brottem*,
    53 So. 3d 334 (Fla. Dist. Ct. App. 2010) .............................................41

*Goldsmith v. Bagby Elevator Co.*,
    513 F.3d 1261 (11th Cir. 2008) ......................................................50

*Grant v. Preferred Research Inc.*,
    885 F.2d 795 (11th Cir. 1989) ................................................ passim

*Hargett v. Valley Fed. Sav. Bank*,
    60 F.3d 754 (11th Cir. 1995)........................................................12

*Horvath v. Delida*,
    540 N.W.2d 760 (Mich. Ct. App. 1995) ...............................................43

*In re Cotter Corp., (N.S.L.)*,
    22 F.4th 788 (8th Cir.),
    *cert. denied sub nom. Banks v. Cotter Corp.*,
    143 S. Ct. 422 (2022) ............................................................. xi

*In re TMI Litig. Cases Consol. II*,
    940 F.2d 832 (3d Cir. 1991).........................................................x

*Irizarry v. Orlando Utilities Comm'n*,
　　No. 619CV268ORL37EJK, 2020 WL 3266215
　　(M.D. Fla. Apr. 3, 2020) ............................................................... 41, 42

*Jerue v. Drummond Co., Inc.*,
　　No. 8:17-CV-587-T-17AEP, 2017 WL 10876737
　　(M.D. Fla. Aug. 17, 2017)................................................................... 40

*Koller v. Pinnacle W. Capital Corp.*,
　　No. CV–06–2031–PHX–FJM, 2007 WL 446357
　　(D. Ariz. Feb. 6, 2007) ...................................................................... 38

*Larson & Larson, P.A. v. TSE Indus., Inc.*,
　　22 So. 3d 36 (Fla. 2009)........................................................ 16, 18, 21

*Lawson v. Gen. Elec. Co.*,
　　140 F. Supp. 3d 968 (N.D. Cal. 2015) ............................................... 38

*Lieupo v. Simon's Trucking, Inc.*,
　　286 So. 3d 143 (Fla. 2019).................................................................. 36

*Nieman v. NLO, Inc.*,
　　108 F.3d 1546 (6th Cir. 1997) ............................................................ xi

*O'Brien v. Town of Bellingham*,
　　943 F.3d 514 (1st Cir. 2019)............................................................... 50

*O'Conner v. Commonwealth Edison Co.*,
　　13 F.3d 1090 (7th Cir. 1994)............................................................... xi

*O'Connor v. Boeing N. Am., Inc.*,
　　No. CV 00-0186 DT RCX, 2005 WL 6035255
　　(C.D. Cal. Aug. 18, 2005).................................................................. 38

*Penthouse N. Ass'n, Inc. v. Lombardi*,
　　461 So. 2d 1350 (Fla. 1984)................................................................ 22

*Pinares v. United Techs. Corp.* (*Santiago*),
　　973 F.3d 1254 (11th Cir. 2020) .................................................. passim

*Pulmosan Safety Equip. Corp. v. Barnes*,
　　752 So. 2d 556 (Fla. 2000)........................................................... 31, 32

*Pulte Home Corp. v. Ply Gem Indus., Inc.*,
  804 F. Supp. 1471 (M.D. Fla. 1992) ....................................................29

*R.R. v. New Life Cmty. Church of CMA, Inc.*,
  303 So. 3d 916 (Fla. 2020) .......................................................... passim

*Roberts v. Fla. Power & Light Co.*,
  146 F.3d 1305 (11th Cir. 1998) ............................................... xi, 37, 39

*Ryman v. Regents of Univ. of Calif.*,
  No. 08-CV-372 WDS/RLP, 2008 WL 11411296
  (D.N.M. Oct. 27, 2008) .........................................................................38

*Seaboard Air Line R. Co. v. Ford*,
  92 So. 2d 160 (Fla. 1955) ......................................................................16

*Sosa v. Airprint Sys., Inc.*,
  133 F.3d 1417 (11th Cir. 1998) ............................................................49

*Suarez v. City of Tampa*,
  987 So. 2d 681 (Fla. Dist. Ct. App. 2008) ...........................................43

*Tri-Lady Marine Ltd. v. Bishop Mech. Servs.*,
  763 F. App'x 882 (11th Cir. 2019) .......................................................46

*Waldman v. Conway*,
  871 F.3d 1283 (11th Cir. 2017) ...................................................... 35, 49

*Wilcox v. Homestake Mining Co.*,
  401 F. Supp. 2d 1196 (D.N.M. 2005) ............................................. 36, 38

*Wilson v. Johns-Manville Sales Corp.*,
  684 F.2d 111 (D.C. Cir. 1982) ..............................................................32

## **Statutes**

42 U.S.C. § 2014 ................................................................................ passim

42 U.S.C. § 2210 ......................................................................................... xi

Fla. Stat. § 95.031 ............................................................................. passim

Fla. Stat. § 95.11 ............................................................................... passim

Fla. Stat. § 376.308 ...............................................................................40

Fla. Stat. § 376.313 ................................................................ 36, 39, 40

Fla. Stat. § 768.81 .................................................................. 26, 27, 29

## **Other Authorities**

Black's Law Dictionary (11th ed. 2019) .................................... 26, 27, 28

## STATEMENT OF JURISDICTION

Plaintiffs' complaints raise public liability actions arising under the federal Price-Anderson Act, which supplies subject-matter jurisdiction, as this Court has already ruled in a related case. *See Santiago*, 973 F.3d at 1260 ("Through the [Price-Anderson] Amendments Act, Congress vested the federal courts with original jurisdiction over public liability actions."). Two Plaintiffs filed their operative complaints directly in federal court, and Pratt & Whitney properly removed the remaining complaints from state court under the Price-Anderson Act. *See* DEs 564-02 through 564-04; DEs 564-06 through 564-13; DE 1 (13-80931).

Plaintiffs offer a superficial challenge to the Court's jurisdiction under the Price-Anderson Act before conceding that jurisdiction is proper based on the prior rulings of this Court and "every other Circuit to examine" the arguments set out by Plaintiffs in their jurisdictional statement. Br. at viii-ix.

Plaintiffs first suggest that the Price-Anderson Act presents some sort of "constitutional quandary" by creating a federal cause of action that incorporates elements of state law. *Id*. Their only support for this proposition, however, is a decision from the Third Circuit that expressly concluded, "Congress did not exceed its constitutional authority in conferring federal jurisdiction over public liability actions." *In re TMI Litig. Cases Consol. II*, 940 F.2d 832, 860 (3d Cir. 1991); *see* Br. at ix. This is echoed in the decisions of this and other courts repeatedly

acknowledging the propriety of jurisdiction under the Price-Anderson Act. *See also In re Cotter Corp., (N.S.L.)*, 22 F.4th 788, 793 (8th Cir.), *cert. denied sub nom. Banks v. Cotter Corp.*, 143 S. Ct. 422 (2022); *Estate of Ware v. Hosp. of the Univ. of Penn.*, 871 F.3d 273, 278-85 (3d Cir. 2017); *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 338-40 (5th Cir. 2000); *Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1306-07 (11th Cir. 1998) (per curiam); *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1548-49 (6th Cir. 1997); *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1099-1101 (7th Cir. 1994).

Plaintiffs next argue that the Price-Anderson Act does not apply because the claims at issue "do not concern a nuclear power facility and do not include the use of indemnified products." Br. at ix. Plaintiffs offer no explanation or precedent to justify these proposed limitations on the scope of the Price-Anderson Act. There is no support in the text of the Price-Anderson Act itself, which provides jurisdiction over a "public liability action" involving a "nuclear incident" without either limitation Plaintiffs propose. 42 U.S.C. § 2210(n)(2); *see id.* §§ 2014(q), (w), (hh). Accordingly, courts addressing Plaintiffs' proposed limitations on the scope of the Price-Anderson Act have uniformly rejected them, as the District Court did. *See Cotter*, 22 F.4th at 793 ("[T]he PAA provides federal question jurisdiction over all 'nuclear incidents,' regardless of whether the defendant had an applicable license or indemnity agreement."); *Estate of Ware*, 871 F.3d at 283 ("We are unpersuaded

that an indemnification agreement is necessary to trigger the Act's applicability."); *Acuna*, 200 F.3d at 339 ("There is nothing in the definition of 'nuclear incident' which suggests it should be contingent on . . . whether the facility is covered under the separate indemnification portions of the Act."); DE 554 at 18. Plaintiffs' abandoned objections to subject-matter jurisdiction have no merit.

Pratt & Whitney concurs with Plaintiffs' statement regarding appellate jurisdiction.

## <u>STATEMENT OF THE ISSUES</u>

1.　　Did the District Court correctly conclude that Florida's four-year statute of limitations bars Plaintiffs' claims, which they admit were filed more than four years after they were diagnosed with brain cancer?

2.　　Did the District Court correctly determine that Florida's four-year statute of limitations for negligence and trespass claims supplied the applicable state rules for Plaintiffs' Price-Anderson Act claims, rather than the statute of limitations for strict liability claims under Florida Statute § 376?

3.　　In the alternative, did the District Court correctly hold that Florida's four-year statute of limitations for claims based on statutory liability applies to claims asserted under Florida Statute § 376?

4.　　Did Plaintiffs preserve their argument concerning the "continuing trespass" doctrine, and if so, does the doctrine apply to personal injury claims resulting from completed acts like those at issue here?

5.　　Did the District Court abuse its discretion by applying long-established Eleventh Circuit precedent to allow Pratt & Whitney to assert the statute of limitations defense, where Plaintiffs had notice of the defense and suffered no prejudice?

## STATEMENT OF THE CASE

### I.    PRATT & WHITNEY AND "THE ACREAGE"

Pratt & Whitney operates a facility in Palm Beach County, Florida. DE 548 ¶ 1.[2] The facility is separated from an area known as "the Acreage" by approximately 25 square miles of undeveloped land in the Corbett Wildlife Management Area. *Id.*; *see* DE 540-1 (map).

In August 2009, the Florida Department of Health began investigating an increased incidence of brain cancer in the Acreage. DE 548 ¶ 2. Following a yearlong investigation, the Florida Department of Environmental Protection concluded that there was "no indication" of "industrial or agricultural hazards" in the Acreage, and that the "Acreage is safe for families to enjoy outside activities in their yards." *Id.*; *see* DE 540-3 (FDEP Report) at 2. The FDEP further determined that "[r]adionuclide levels throughout the Acreage were comparable to general background conditions in Florida." DE 540-3 at 32.

### II.    PLAINTIFFS' CLAIMS

Beginning in 2013, Thomas Cifrodella, Elizabeth Cotromano, Kristina DeCarlo, Garrett Dunsford, Joseph Baratta's estate, Alex Florez's estate, Ida Lozada, Jessica Newfield, Rodeania Peart, Steven Thibodeau, and Ronald Wise

---

[2] All docket entry citations are to Case No. 10-cv-80883, unless otherwise indicated.

("Plaintiffs") each filed personal injury claims against Pratt & Whitney in the litigation below, which were later consolidated with other personal injury claims arising from the same allegations. DE 548 ¶¶ 3, 11-62; *see* DE 236. Plaintiffs claimed that that they or their loved ones suffered brain cancer caused by exposure to environmental contaminants, which they alleged Pratt & Whitney discharged into the Acreage. DE 548 ¶ 3. Importantly, as Plaintiffs admit, each Plaintiff was diagnosed with brain cancer "more than four years before the filing of these actions." Br. at 3.

Plaintiffs' complaints asserted federal claims under the Price-Anderson Act, Florida state-law claims for negligence, trespass, loss of consortium, and wrongful death, and claims under Florida Statute § 376. *See* DE 548 ¶¶ 11-62. Plaintiffs initially attributed their injuries to alleged contamination in the Acreage from radioactive *and* non-radioactive materials. Each Plaintiff pursued alternative theories of liability in their complaints based on radioactive materials (such as Cadmium-109) and non-radioactive materials (such as lead and benzopyrene). *E.g.*, DE 74 (13-80929) ¶¶ 116-23, 137-39 (*Cotromano* Am. Compl.).

Given Plaintiffs' focus on non-radioactive materials, Pratt & Whitney anticipated that Plaintiffs would rely on provisions in the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA) to avoid the applicable accrual rules under Florida state law that would otherwise

apply to their claims to trigger the statute of limitations. In a related, consolidated case that has already come before this Court, the plaintiffs (representatives of the estate of Cynthia Santiago) attempted to invoke CERCLA's "federally required commencement date" to delay accrual of her claims. DE 407 at 2-3; *see Santiago*, 973 F.3d at 1257. Because Ms. Santiago eventually limited herself to the allegation that her brain cancer was caused by exposure to radioactive materials, this Court concluded that the federally required commencement date was inapplicable to her claims, which were preempted entirely by the Price-Anderson Act. *See Santiago*, 973 F.3d at 1257.

Given Plaintiffs' wide-ranging non-radiological allegations, Pratt & Whitney only asserted the statute of limitations as a defense in its initial answers to certain individuals' claims. For instance, Pratt & Whitney asserted the statute of limitations in its answer to Plaintiff Ronald Wise's complaint. DE 46 (14-80655) at 62. Mr. Wise filed his complaint in 2014, several months after the other Plaintiffs. DE 564-12. As such, Mr. Wise's claims accrued more than four years before he filed his complaint, regardless whether the federally required commencement date under CERCLA or the default Florida accrual rules applied to his claims. *See* DE 398-2 at 15. The same was true for Ms. Santiago, who filed her complaint in late 2014. DE 1 (14-81385); DE 14 (14-81385) at 60.

Discovery commenced thereafter on a consolidated basis across all cases—both those in which Pratt & Whitney initially pled the statute of limitations, and those where it did not. DE 409 at 7. As the District Court concluded, Plaintiffs were on notice of Pratt & Whitney's statute of limitations defense from the outset of these cases. *Id*.

## III.  PLAINTIFFS' EXPERT DISCLOSURES

After years of discovery, Plaintiffs filed expert disclosures in December 2017. DE 370-3. Plaintiffs admit that they "disclosed expert opinions focusing *exclusively* on the purported link between ionizing radiation and brain cancer." Br. at 9 (emphasis added). Plaintiffs, for the first time, abandoned any allegation that their injuries could be attributable to non-radioactive materials.

Plaintiffs' disclosures made clear that their decision to narrow their claims to focus on radioactive materials was driven by scientific evidence, not litigation strategy. As Dr. William Sawyer, one of Plaintiffs' experts, explained in his report, "the only established environmental risk factor for brain and central nervous system (CNS) cancers from available evidence garnered from multiple studies is ionizing radiation exposure." DE 289-3 at 14. Plaintiffs were not, as they now assert, baited into narrowing their claims to radioactive materials. *See* Br. at 11-12. Instead, Plaintiffs narrowed their claims because there is no plausible scientific

basis to allege that environmental exposure to non-radioactive materials can even cause brain cancer.

## IV.   PRATT & WHITNEY'S MOTIONS TO AMEND

Based on Plaintiffs' expert disclosures, which narrowed their claims to focus only on radioactive materials, Pratt & Whitney moved to amend its answers to assert the statute of limitations defense as to the remaining Plaintiffs. *See* DEs 370-80. Pratt & Whitney moved for leave not only based on Plaintiffs' expert disclosures, but also because Plaintiffs had been on notice of the issue of the statute of limitations from other consolidated cases, including *Wise* and *Santiago*, and could show no prejudice if Pratt & Whitney were permitted to assert the defense. *See, e.g.*, DE 370 at 6-7; *see also* DE 409 at 6-7. Pratt & Whitney filed its motions for leave years before summary judgment and at a time when no trial dates had been set. *See* DE 409 at 1.

The District Court, relying on this Court's decision in *Grant v. Preferred Research Inc.*, 885 F.2d 795 (11th Cir. 1989), granted Pratt & Whitney's motions. DE 409 at 7. Consistent with *Grant*, the District Court concluded that Plaintiffs had "adequate notice of the defense" because Pratt & Whitney moved to amend before filing for summary judgment and because the defense was pled "in three of the other consolidated cases." *Id*. Likewise, the District Court concluded that Plaintiffs could not establish any prejudice from the amendment because they did not pursue

any additional discovery or assert product liability claims in response to the cases in which the statute of limitations was initially pled. *Id*. at 6-7.

## V.    *SANTIAGO*

Pratt & Whitney also moved for summary judgment on the statute of limitations in the related *Santiago* matter. DE 328. The District Court determined that Ms. Santiago's claims were preempted by the Price-Anderson Act, that her claims were governed by Florida's four-year statute of limitations which began running no later than her diagnosis with brain cancer, and that there were no applicable exceptions to delay accrual of her claims or toll the statute of limitations. DE 407 at 4-14. The District Court therefore granted summary judgment for Pratt & Whitney. *Id.* at 14.

This Court affirmed the District Court on appeal. *Santiago*, 973 F.3d at 1257. This Court's opinion explained that Ms. Santiago's claims constituted a "public liability action" under the Price-Anderson Act because she alleged personal injury resulting from exposure to radioactive materials. *Id.* at 1259. As such, the Court agreed that the Price-Anderson Act governed Ms. Santiago's claims. *Id.* This Court then reasoned that, under the Price-Anderson Act, Florida state law provides the relevant rules for decision, so long as that law is consistent with the Price-Anderson Act. *Id.* (citing 42 U.S.C. § 2014(hh)); *see also id.* at 1260-63. Given that, this Court applied Florida law in determining that (a) Ms.

Santiago's negligence and trespass claims were subject to a four-year statute of limitations, (b) that statute of limitations began to run no later than when Ms. Santiago was diagnosed with brain cancer, (c) Ms. Santiago filed suit more than four years after her cancer diagnosis, and thus (d) the statute of limitations expired before Ms. Santiago filed suit. *Id.* at 1259.

Each of Plaintiffs' claims at issue in this appeal are substantively identical to the claims in *Santiago*.

## VI.  PLAINTIFFS' MOTION TO STAY AND SUBSEQUENT PROCEEDINGS

The *Santiago* plaintiffs filed their notice of appeal in December 2018. DE 411. While their appeal was pending, the Plaintiffs in the cases at issue here did not seek any additional discovery regarding the statute of limitations, seek leave to file amended expert reports, or ask to amend their complaints—actions Plaintiffs had previously suggested they may pursue. *See* DE 381 at 11-12, DE 432 at 52:25-55:23, 58:7-63:9. Instead, the Plaintiffs here sought to stay their cases pending the *Santiago* appeal, which the District Court granted in February 2019 over Pratt & Whitney's objection. DE 453.

Over three years passed. Not once did Plaintiffs seek to reopen the cases to seek additional discovery or attempt to amend their complaints. In 2023, after this Court issued its *Santiago* opinion, Pratt & Whitney sought to lift the stay and reopen Plaintiffs' claims. DE 531. Plaintiffs opposed reopening the cases, or

8

alternatively *agreed* that if the cases were to be reopened, the Court should enter a briefing schedule for summary judgment motions on the statute of limitations. DE 534 at 13. Here again, Plaintiffs did not pursue new theories or seek to conduct additional discovery.

Pratt & Whitney moved for summary judgment in all Plaintiffs' cases on statute of limitations grounds. DE 539. The District Court, consistent with this Court's *Santiago* opinion, determined that Plaintiffs' claims were preempted by the Price-Anderson Act, that Florida's four-year statute of limitations governed their claims, and the statute of limitations began to run at Plaintiffs' dates of diagnosis, which in all cases was admittedly more than four years before Plaintiffs filed their complaints. DE 554 at 12-19. The District Court granted summary judgment. *Id.* at 19.

## SUMMARY OF THE ARGUMENT

**Summary judgment.** This Court should affirm the District Court's order granting summary judgment. *De novo* review applies. *Santiago*, 973 F.3d at 1259. The District Court correctly concluded that Plaintiffs' claims are barred by Florida's four-year statute of limitations. Under the relevant statutory framework, the four-year limitations period began running no later than Plaintiffs' cancer diagnoses, and Plaintiffs admit they filed their lawsuits more than four years after their diagnoses. Accordingly, their claims are time-barred.

Plaintiffs first attempt to avoid the statute of limitations by trying to delay accrual of their claims beyond their respective diagnoses with brain cancer. Yet under Florida law, claims accrue according to a strict statutory framework that dictates that Plaintiffs' claims accrued when the last element constituting their causes of action occurred. Here, that is Plaintiffs' diagnoses with brain cancer, which occurred in each case more than four years before Plaintiffs filed their initial complaints.

Plaintiffs present several, unavailing arguments to avoid this conclusion. *First*, Plaintiffs try recasting their injury as "exposure," not brain cancer. But these are personal injury claims in which Plaintiffs seek damages for having suffered brain cancer, and their claims accrued no later than their cancer diagnoses. *Second*, Plaintiffs endeavor to reframe their allegations as sounding in products liability to

10

take advantage of a statutory exception to the default accrual rule for product liability claims. Yet below, Plaintiffs repeatedly admitted that their claims do *not* sound in products liability, nor could they. Plaintiffs allege they were injured by environmental waste that they claim Pratt & Whitney released into the Acreage, not by any product that Pratt & Whitney manufactured or sold, and which Plaintiffs bought or otherwise received. *Third*, Plaintiffs say that their claims should have accrued later under something they term the "manifestation doctrine." The "manifestation doctrine," however, is just another term for the "delayed discovery doctrine," which Florida law expressly limits to product liability cases and other matters not at issue.

Plaintiffs next attempt to avoid the statute of limitations by sidestepping the application and operation of Florida's four-year limitations period. But the District Court correctly concluded that Plaintiffs' Price-Anderson Act claims are governed by the four-year statute of limitations that Florida law applies to analogous negligence and trespass claims. Because there is no basis under Florida law to toll the statute of limitations in these cases, the District Court concluded that the statute of limitations expired four years after Plaintiffs' claims accrued and, therefore, that their claims were untimely.

Plaintiffs first argue that the District Court should have applied the statute of limitations for claims under Florida Statute § 376—which Plaintiffs assert has no

statute of limitations—to their Price-Anderson Act claims. The District Court correctly rejected Plaintiffs' argument, recognizing that § 376 cannot supply the substantive state law for a Price-Anderson Act claim because § 376 is a strict liability statute that is fundamentally inconsistent with the Price-Anderson Act. Regardless, a four-year statute of limitations also governs claims for "statutory liability" under Florida law, including § 376 claims.

Plaintiffs then argue that the District Court should have tolled the statute of limitations under Florida's "continuing trespass" doctrine. Plaintiffs waived any reliance on the "continuing trespass" doctrine by failing to raise it below. Even so, that doctrine has no application here, where Plaintiffs seek compensation for brain cancers they allege Pratt & Whitney inflicted in the past, not abatement of ongoing environmental contamination.

**Motion to amend**. This Court should also affirm the District Court's order granting Pratt & Whitney leave to amend its answers to assert the statute of limitations defense. The District Court's decision to permit amendment was a proper exercise of its discretion. *See Hargett v. Valley Fed. Sav. Bank*, 60 F.3d 754, 762-63 (11th Cir. 1995) (reviewing district court's decision to permit amendment to add a statute of limitations defense for abuse of discretion). Under this Court's decision in *Grant v. Preferred Research*, *Inc.*, 885 F.2d 795 (11th Cir. 1989), a defendant does not waive the statute of limitations despite not pleading

the defense, so long as a plaintiff has notice of the defense and suffers no prejudice. The District Court acted within its discretion in applying *Grant* and determining that Plaintiffs had proper notice and suffered no prejudice, particularly given that Pratt & Whitney filed its motions to amend before summary judgment and before trials were set in any case.

The District Court correctly concluded that, based on *Grant*, Pratt & Whitney did not need to show good cause to assert the statute of limitations. Nevertheless, Pratt & Whitney supplied good cause based on Plaintiffs' expert disclosures, which narrowed their claims to focus solely on radioactive materials, especially when considering those disclosures along with the procedural stage, notice provided, and lack of prejudice at issue. To that end, any error accompanying the District Court's decision to permit amendment was harmless, given Plaintiffs never sought any of the additional discovery or pursued any of the additional theories they claimed as the basis for prejudice in the years following the District Court's order. Nor could Plaintiffs have done anything to evade the statute of limitations, which plainly bars their claims.

## ARGUMENT

## I.    FLORIDA'S FOUR-YEAR STATUTE OF LIMITATIONS BARS PLAINTIFFS' CLAIMS

Plaintiffs concede that, as in *Santiago*, Florida law supplies the relevant statute of limitations. Br. at 16; *see Santiago*, 973 F.3d at 1257. As the Florida Supreme Court recently detailed in its decision in *R.R. v. New Life Community Church of CMA, Inc.*, the Florida legislature "has adopted a comprehensive statutory framework to govern limitations periods, including provisions that address when those periods begin to run (accrual) and when they are suspended from running (tolling)." 303 So. 3d 916, 918 (Fla. 2020). The application of that statutory framework in these cases is straightforward. Plaintiffs' claims here are plainly time-barred because they failed to "file [their] lawsuit[s] within four years of [their] cancer diagnosis," just as in *Santiago*. 973 F.3d at 1259.

Remarkably, Plaintiffs largely ignore the Florida statutory provisions at issue and fail even to cite the leading Florida Supreme Court case, *New Life Community Church*, that squarely addresses the central questions regarding the statute of limitations at issue in this appeal. Florida law unambiguously dictates that (a) a four-year statute of limitations applies to Plaintiffs' claims and (b) the limitations period began to run no later than the dates Plaintiffs were diagnosed with cancer. Because Plaintiffs did not file suit until more than four years after their cancer diagnoses, their claims are time-barred.

14

## A.    Under Florida Law, A Four-Year Statute Of Limitations Applies To Plaintiffs' Claims

Plaintiffs concede that these cases are "public liability action[s]" preempted by the Price-Anderson Act. Br. at ix, 35; *see Santiago*, 973 F.3d at 1259-61. There is no federally defined statute of limitations applicable to public liability actions brought under the Price-Anderson Act. *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 543 (2d Cir. 1999). Instead, "substantive rules for decision" are derived from the "law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions" of the Act. 42 U.S.C. § 2014(hh). Courts therefore look to state law to define the applicable statute of limitations for Price-Anderson Act claims. *See Santiago*, 973 F.3d at 1259; *Corcoran*, 202 F.3d at 543. Here, it is undisputed that Florida supplies the relevant statute of limitations applicable to Plaintiffs' claims. Br. at 16.

Plaintiffs' Price-Anderson Act claims fundamentally sound in allegations of negligence, trespass, and loss of consortium. Each of those claims is subject to a four-year statute of limitations under Florida law. *See* Fla. Stat. § 95.11(3)(a) (negligence); *id.* § 95.11(3)(g) (trespass); *Santiago*, 973 F.3d at 1258 n.4; *Elkins v. R.J. Reynolds Tobacco Co.*, 65 F. Supp. 3d 1333, 1337 (M.D. Fla. 2014) ("When a

loss of consortium claim is linked to [] a personal injury claim, the limitations period on the consortium claim is four years as well.").[3]

### B.    The Four-Year Statute of Limitations Began To Run No Later Than Plaintiffs' Cancer Diagnoses

Under Florida law, the statute of limitations on Plaintiffs' claims "runs from the time the cause of action accrues." Fla. Stat. § 95.031. Florida law supplies a default rule to determine accrual which holds that a "cause of action accrues when the last element constituting the cause of action occurs." *Id.* § 95.031(1). For personal injury claims, "the cause of action accrues and the statute begins to run from the time when the injury was first inflicted, and not from the time when the full extent of the damages sustained have been ascertained." *Larson & Larson, P.A. v. TSE Indus., Inc.*, 22 So. 3d 36, 42 (Fla. 2009) (quoting *Seaboard Air Line R. Co. v. Ford*, 92 So. 2d 160, 164 (Fla. 1955)); *see also New Life*, 303 So. 3d at 921. As such, the accrual date in Plaintiffs' cases was no later than the dates of their cancer diagnoses, which are the injuries Plaintiffs allege in their complaints. *See Santiago*, 973 F.3d at 1259 (stating that Ms. Santiago's cancer diagnosis was her accrual date).

---

[3] For the reasons stated *infra* at 35-42, Florida Statute § 376 cannot provide the applicable statute of limitations, but if it did, a four-year statute of limitations would also apply.

Florida law is clear that the "unambiguous statutory default rule for accrual [] applies in all cases 'except as provided' in statute." *New Life*, 303 So. 3d at 923 (quoting Fla. Stat. § 95.031). The "*only* statutory bases for the delayed discovery rule are in 'cases of fraud, products liability, professional and medical malpractice, and intentional torts based on abuse.'" *Id*. at 921 (quoting *Davis v. Monahan*, 832 So. 2d 708, 710 (Fla. 2002)) (original emphasis). Because none of the statutory exceptions to the default accrual rule apply, the District Court correctly determined that Plaintiffs' claims accrued no later than their respective diagnoses with cancer. DE 554 at 13-15.

### C.   Plaintiffs Filed Suit More Than Four Years After Their Cancer Diagnoses, And Their Claims Are Therefore Time-Barred

Plaintiffs expressly admit in their brief that each of their cancer diagnoses "occurred more than four years before the filing of these actions." Br. at 3. Using their diagnosis dates as the *latest* possible accrual date, Plaintiffs' claims were filed more than four years after the claims accrued and are therefore time-barred. This Court should affirm the District Court's summary judgment order.

## II.   PLAINTIFFS' ARGUMENTS AGAINST DIAGNOSIS AS THE ACCRUAL DATE ARE FLAWED

Plaintiffs' first effort to avoid the statute of limitations is to challenge the District Court's conclusion that their claims accrued no later than their respective diagnoses with brain cancer. As described above, the District Court's reliance on

the diagnosis date for each Plaintiff fits squarely with controlling Florida law that provides that personal injury claims accrue "when the injury was first inflicted." *Larson & Larson*, 22 So. 3d at 42. Here, each Plaintiff alleges brain cancer as their injury. Plaintiffs' diagnosis dates are therefore the latest possible accrual dates.

Plaintiffs advance three unavailing arguments in hopes of evading that conclusion. *First*, Plaintiffs argue that the District Court erred in determining their injury was cancer, versus "exposure," and thus selected an incorrect accrual date. Br. at 20-23. This argument misrepresents their complaints and is contrary to their repeated admissions that the injury on which their claims are based is brain cancer.

*Second*, Plaintiffs argue that their claims sound in products liability, and attempt to rely on accrual rules that apply specifically to product liability claims under Florida law. *Id.* at 27-34. Plaintiffs' claims do not sound in products liability, as they admitted repeatedly below.

*Third*, Plaintiffs argue that the accrual of their claims should have been postponed based on the "manifestation doctrine." *Id.* at 24-27. What Plaintiffs call the "manifestation doctrine," however, is nothing more than the statutorily codified discovery rule that applies to product liability claims. There are no statutory exceptions to the default accrual rule under Florida law that apply to Plaintiffs' environmental tort claims and Florida law is express in prohibiting judicial

expansion of the delayed discovery doctrine beyond its statutory parameters. *See New Life*, 303 So. 3d at 918, 923-24.

> ### A. The District Court Correctly Identified Plaintiffs' Brain Cancers As Their Injury And Their Diagnoses As The Accrual Date

In determining when Plaintiffs' personal injury claims accrued, the District Court correctly determined that the injuries for which Plaintiffs seek damages—brain cancers—were the relevant injuries for purposes of accrual. DE 554 at 13 & n.6. Then, mindful of the fact that Plaintiffs' claims would have technically accrued "when Plaintiffs first contracted the disease," the District Court reasoned that "[t]he date of diagnosis is the *latest* date that Plaintiffs would have become aware of their injury." *Id.* at 13 n.6 (emphasis added). The District Court therefore used Plaintiffs' diagnosis dates as the accrual date. *Id.* This analysis, which this Court expressly approved in *Santiago*, was sound. 973 F.3d at 1258-59 (statute of limitations ran from Ms. Santiago's "cancer diagnosis").

Plaintiffs now contend that the relevant injury was "exposure," not cancer, and that the statute of limitations did not accrue until Plaintiffs knew the cause of their exposure. Br. at 20-23. Neither contention is accurate. Not only that, but any error in the District Court's use of cancer diagnosis rather than exposure was harmless, because it resulted in the statute of limitations accruing *later* than Plaintiffs' first alleged exposure.

19

### 1. Each Plaintiff's Alleged Injury Is Brain Cancer, Not "Exposure"

Plaintiffs claim on appeal that their alleged injuries "ha[ve] always been a toxic exposure." Br. at 16. On the contrary: from the beginning, Plaintiffs asserted personal injury claims resulting from brain cancer. Plaintiffs invariably plead that they or their loved ones suffered "brain tumor[s]," and seek various damages they claim resulted from that injury. *See, e.g.*, DE 74 (13-80929) ¶¶ 16-20, 207 (*Cotromano* Am. Compl.). Indeed, Plaintiffs expressly admitted below that their alleged injuries in this case were brain cancers. *See* DE 548 ¶ 3 (admitting Plaintiffs "each filed personal injury claims against Pratt & Whitney in which they allege *their cancers* were caused by exposure to radioactive materials they claim Pratt & Whitney discharged into the environment" (emphasis added)). And the only "causation" experts Plaintiffs proffered "focused exclusively on the purported link between ionizing radiation and *brain cancer*." *Id*. ¶ 6. (emphasis added).

Plaintiffs attempt to recast their injuries as "exposure" to create confusion over the nature of their claims in hopes of avoiding the statute of limitations. The District Court properly rejected this gambit. Plaintiffs improperly conflate the alleged negligent act (exposure to radioactive materials) with the injury they claim they suffered as a result (brain cancer). *See* Br. at 21 (suggesting a car accident, instead of the resulting harm, is the injury under Florida law). As the Florida Supreme Court has explained, the injury relevant for triggering the statute of

20

limitations is the "loss" suffered by the plaintiff. *See Larson & Larson*, 22 So. 3d at 42 (differentiating between a lawyer's malpractice (the act) and the loss suffered by the client (the injury)). Here, the injury suffered by Plaintiffs was the development of brain cancer, the diagnosis of which serves as the accrual date for their claims. Moreover, Plaintiffs have also failed to identify any support under Florida law for the proposition that an alleged "toxic exposure" is alone sufficient to constitute a cognizable injury without some associated harm.

### 2. Plaintiffs' Claims Accrued No Later Than When They Knew They Had Brain Cancer

In addition to wrongly claiming that the relevant injury was "exposure," Plaintiffs contend that their claims did not accrue until they knew of the "source" of their alleged exposure. Br. at 22-23. Plaintiffs rely on *Florida Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514 (11th Cir. 1996). In *Allis Chalmers*, the plaintiff had knowledge of its injury nine years before it filed suit but waited years after the statute of limitations had run to file. *Id.* at 1519. The district court granted summary judgment for the defendant under Florida law. *Id.* This Court affirmed the district court's ruling, explaining that the statute of limitations accrues "when the last element constituting the cause of action occurs and the plaintiff knew or should have discovered the injury." *Id*. at 1518. Once a plaintiff is on notice of their injury, their cause of action accrues notwithstanding that a plaintiff might not immediately "know the full extent of its injury." *Id.* at 1519. Thus, under *Allis*

*Chalmers*, Plaintiffs' claims here accrued as soon as they knew they had cancer—*i.e.*, no later than their diagnosis dates—regardless of the extent of their injuries or damages incurred thereafter. DE 554 at 13 n.6.

Plaintiffs' skewed interpretation of *Allis Chalmers* turns on misreading a single sentence from the opinion that posits that the statute of limitations accrues "the moment the injured party or a reasonable person in the injured party's situation knew or should have known that the acts complained of caused damage." 85 F.3d at 1519. Plaintiffs assert that this sentence establishes a rule that delays accrual of their claims until they discovered "possible contamination" as the source of their cancer. Br. at 22-23. But *Allis Chalmers* establishes no such rule. This sentence merely emphasizes that knowledge of "damage" (or "injury") is what triggers accrual under Florida law, as the District Court recognized here. DE 554 at 13 n.6.[4] Nothing in *Allis Chalmers* requires a party in Plaintiffs' position to know the source of their injury for a cause of action to accrue. Such a rule would be plainly contrary to Florida law, which narrowly circumscribes the "delayed discovery" doctrine to those claims expressly identified by statute. *New Life*, 303 So. 3d at 923; *see infra* at 30-34.

---

[4] This conclusion is reinforced by this Court's citation in *Allis Chalmers* to *Penthouse North Association, Inc. v. Lombardi*, 461 So. 2d 1350 (Fla. 1984). In *Penthouse*, the Florida Supreme Court concluded that a "cause of action does not accrue until *someone has been damaged* by the acts complained of." 461 So. 2d at 1352 (emphasis added).

Plaintiffs' claims accrued when they had knowledge of their brain cancers, and *Allis Chalmers* does not teach otherwise.

### 3. Any Error In Using Diagnosis As The Accrual Date Was Harmless

Plaintiffs fault the District Court for "essentially creat[ing] its own discovery date" by using diagnosis as the accrual date. Br. at 21. The District Court did nothing of the sort. Rather, the District Court gave Plaintiffs the *benefit* of a later accrual date, recognizing that the actual accrual date "would have been earlier when Plaintiffs first contracted the disease." DE 554 at 13 n.6. In other words, the District Court evaluated the statute of limitations based on "the latest date from which the limitations period began to run." *Id*. Starting the limitations period from when Plaintiffs first began to develop cancer or when they were first exposed would mean their claims accrued *earlier* than the District Court determined. By using the diagnosis date, the District Court evaluated the timeliness of Plaintiffs' claims in the light most favorable *to Plaintiffs*. Had the District Court used an earlier accrual date, Plaintiffs' claims would have been filed that much longer after the statute of limitations had run. As such any error in the District Court's use of diagnosis as the accrual date was harmless.

**B.    The District Court Correctly Determined That Plaintiffs' Claims Do Not Sound In Products Liability**

Plaintiffs originally filed complaints nearly a decade ago alleging that Pratt & Whitney mishandled environmental waste in ways that purportedly exposed them to contamination tied to their brain cancers. At the eleventh hour, and for the sole purpose of evading Florida's statute of limitations, Plaintiffs now contend that their claims in fact sound in products liability. Plaintiffs pursue this newfound fiction for one purpose: they seek to take advantage of accrual rules under Florida law that apply exclusively to product liability claims. *See* Fla. Stat. § 95.031(2)(b).

The District Court saw through Plaintiffs' attempt to refashion their decade-old allegations into a product liability claim. The court noted various critical failures with Plaintiffs' argument, including specifically that "[t]here are no *products* alleged to be involved in causing the cancers in this case." DE 554 at 14-15 (original emphasis). Because Plaintiffs admitted below that their claims do not sound in products liability, and because their allegations do not raise product liability claims, the Court should similarly reject Plaintiffs' argument.

**1.    Plaintiffs Repeatedly Admitted Below That They Have *Not* Asserted Product Liability Claims**

Plaintiffs' assertion that their claims sound in products liability is directly contrary to their prior admissions. The parties briefed and argued about the nature of Plaintiffs' claims in the context of Pratt & Whitney's motions to amend to assert

the statute of limitations, discussed *infra* at 44-53. In their written opposition, Plaintiffs maintained that the District Court should deny the motions *precisely because* Plaintiffs had *not* pled product liability claims. DE 381 at 9 ("If [Pratt & Whitney] had given any indication that it would seek to add the statute of limitations . . . Plaintiffs *could have sought leave to amend to include the claims* and parties that would not be so adversely impacted, *such as product liability claims.*" (emphases added)).

Plaintiffs then doubled down on their admission during oral argument, acknowledging that they "could have looked at a products liability claim," but conceding that they "didn't look at [] products liability" in fashioning their claims in this case. DE 432 at 60:11-13.

Plaintiffs' repeated admissions that their claims do *not* sound in products liability belie their current attempt to recast their complaints. Plaintiffs never sought to amend their complaints to include product liability allegations, and only now argue that their claims have sounded in products liability all along. After nearly a decade of litigation, Plaintiffs have by their own admissions waived the position that their claims sound in products liability.[5]

---

[5] Plaintiffs did not take the position that their claims sounded in products liability in their summary judgment briefing, instead raising the idea for the first time in the entire case at oral argument. DE 574 at 54:1-9, 67:11-14.

### 2. Consistent With Their Admissions, Plaintiffs Do Not Allege Product Liability Claims

Even a cursory review of Plaintiffs' complaints confirms the District Court's conclusion that Plaintiffs assert claims for alleged environmental torts, not products liability. Despite now asserting that their claims sound in products liability, Plaintiffs cannot identify anywhere that they even alleged that they were hurt by a product manufactured or sold by Pratt & Whitney. Instead, the thesis of Plaintiffs' claims in this case is that Pratt & Whitney mishandled environmental waste in ways that supposedly contaminated the Acreage.

The heart of a product liability claim is the allegation that the plaintiff was injured by some "defective product." *See Products Liability*, Black's Law Dictionary (11th ed. 2019) ("A manufacturer's or seller's tort liability for any damages or injuries suffered by a buyer, user, or bystander as a result of a defective product."). As the District Court explained, under Florida law, "a products liability claim is one that seeks damages caused by the manufacture, design, formulation, installation, preparation or assembly of a *product*." DE 554 at 14 (citing Fla. Stat. § 768.81(d)).[6] A "product," in turn, is "[s]omething that is distributed

---

[6] Plaintiffs take umbrage with the District Court's reference to this statute. *See* Br. at 32-34. But there was no error in the District Court's use of the statute to illustrate the contours of product liability claims under Florida law. The District Court correctly explained that a product liability claim can arise through a cause of action for negligence, but Plaintiffs simply did not (and could not) bring such a claim here. *See* DE 554 at 14-15 & n.8.

commercially for use or consumption and that is usu[ally] (1) tangible personal property, (2) the result of fabrication or processing, and (3) an item that has passed through a chain of commercial distribution before ultimate use or consumption." *Product*, Black's Law Dictionary (11th ed. 2019).

These cases are not product liability actions. Plaintiffs' core allegation is that their cancers were caused by environmental "waste" and "contaminants" that Pratt & Whitney purportedly released into the Acreage through "misuse, dumping and neglect." *See, e.g.*, DE 74 (13-80929) ¶¶ 139, 147, 170-71 (*Cotromano* Am. Compl.). Their allegations are not, and have never been, that Pratt & Whitney manufactured or sold a "product" to Plaintiffs that caused their cancers. Plaintiffs do not identify anything that Pratt & Whitney distributed commercially for use or consumption that Plaintiffs then purchased or received. As such, Plaintiffs' attempt to re-mold their allegations into product liability claims is flatly inconsistent with the substance of their actual claims.

Plaintiffs tout that the word "product" appears "over 29 times" in their complaints, Br. at 3, without addressing *how* that word is used. Of course, simply using the word "product" does not transform their complaints into actions for products liability. Fla. Stat. § 768.81(d) ("The substance of an action, not the conclusory terms used by a party, determines whether an action is a products liability action."). Here, as demonstrated by the lone example included in their

brief, Plaintiffs use the word "product" as a synonym for an environmental "contaminant" or "constituent"—*e.g.*, "naturally or non-naturally occurring radioactive *products* leached into the environment." Br. at 3-4 (original emphasis). Referring to the toxic substances allegedly at issue in this case as "products" or "by-products" does not convert environmental waste material into something that Pratt & Whitney "distributed commercially for use or consumption." *Product*, Black's Law Dictionary (11th ed. 2019).

Plaintiffs raise "fill dirt" in their brief in an effort to make this dirt the supposed product at issue in their claims. *See* Br. at 27-28. They argue in their brief that Pratt & Whitney "put its radioactive waste into the market as a dirt product when they deliberately provided contaminated soils to fill transporters and a soil recycler." *Id.*[7]

Plaintiffs did not identify "fill dirt" as the "product" allegedly at the center of their claims in either their summary judgment briefing or statement of additional undisputed facts before the District Court. *See* DEs 548 & 549. More to the point, Plaintiffs' complaints are devoid of any allegations that Pratt & Whitney supplied

---

[7] Tellingly, Plaintiffs provide no support for this baseless assertion other than a blank footnote. A jury has already rejected this theory in a related case. *See* DE 816 (13-80928) (concluding that Plaintiffs failed to prove that "a discharge or other condition of pollution . . . was released into or upon the Acreage," and failed to prove that radioactive materials "were transported to locations in the Acreage"). And, importantly, Plaintiffs do not even allege (let alone have any proof) that they received contaminated fill dirt from Pratt & Whitney.

contaminated fill dirt to Plaintiffs, or that Plaintiffs received such dirt at their homes from Pratt & Whitney or any other source. "It is well established under Florida law and elsewhere that *identification* of the product that caused the harm *as the one* sold or manufactured by the defendant is an essential element" of a product liability claim. *Pulte Home Corp. v. Ply Gem Indus., Inc.*, 804 F. Supp. 1471, 1484-85 (M.D. Fla. 1992) (emphasis added). Plaintiffs fail to identify any dirt or other product in their pleadings that they claim Pratt & Whitney placed in commerce and that Plaintiffs purchased or otherwise received.[8]

\*     \*     \*

Notwithstanding their attempt to salvage their untimely claims, the substance of Plaintiffs' claims matches the truth of the admissions they repeatedly made below: Plaintiffs' claims are premised on the alleged improper disposal of environmental waste, not products liability. As such, Plaintiffs are not entitled to

---

[8] Separately, Plaintiffs attempt to downplay the relevance of identifying a "product" by noting that the Florida statutory provision codifying the delayed discovery doctrine in product liability claims, *see* Fla. Stat. § 95.031(2)(b), references Florida's statutory limitations periods for various causes of action, *see id.* § 95.11(3); Br. at 31. This reference is simply a recognition that under Florida law, plaintiffs can pursue product liability claims through various causes of action. *See* Fla. Stat. § 768.81(d). That a plaintiff may bring a product liability claim styled variously as negligence or strict liability does not change the basic requirement of such a claim to identify a product. *See Pulte Home Corp.*, 804 F. Supp. at 1484-85.

the benefit of the discovery rule applicable to product liability claims under Florida law.

### C.     The "Manifestation Doctrine" Does Not Postpone Accrual Of Plaintiffs' Claims

Finally, Plaintiffs seek to postpone the accrual of their claims through attempting to invoke what they term the "manifestation doctrine." Br. at 24. Plaintiffs argue that under this supposed doctrine, Plaintiffs were not required to file their claims until they became aware that there were radioactive materials from Pratt & Whitney present in the Acreage. *Id.* at 26.

This argument fails for two reasons. *First*, what Plaintiffs term the "manifestation doctrine" is nothing more than a different name for the delayed discovery doctrine governing product liability claims under Florida law. *See* Fla. Stat. § 95.031(2)(b). Every case purporting to apply this doctrine cited by Plaintiffs is a product liability case. Because their claims are not product liability claims, Plaintiffs are not entitled to the delayed discovery rule under Florida law. *Second*, to the degree Plaintiffs urge this Court to expand the scope of the delayed discovery doctrine under Florida law, their request is improper and inconsistent with Florida law as the Florida Supreme Court recently cautioned in *New Life Community Church*.

30

### 1.    Florida Law Limits The Delayed Accrual That Plaintiffs Seek To Product Liability Cases

Plaintiffs claim that Florida law imposes a "manifestation doctrine" that should delay accrual of Plaintiffs' claims. As Plaintiffs would have it, the "manifestation doctrine" delays accrual of their claims until they knew or should have known "of the possibility of any connection between their disease and any contamination." *See* Br. at 26.

As an initial matter, Plaintiffs fail to identify the source of this so-called "manifestation doctrine" under Florida law. Instead, Plaintiffs cite cases like *Pulmosan Safety Equipment Corp. v. Barnes*, 752 So. 2d 556 (Fla. 2000), that discuss the challenges created by "latent and undiscoverable" injuries in the context of product liability cases. *Id.* at 557-59; *see* Br. 25-26. This is not a product liability case and Plaintiffs' injuries were fully known to them, not "latent and undiscoverable," no later than their diagnosis dates.

Regardless, what Plaintiffs describe as the "manifestation doctrine" appears to be nothing more than a colloquial name for the statutorily codified "delayed discovery" doctrine that applies to product liability cases under Florida law. *See New Life*, 303 So. 3d at 921 ("The 'delayed discovery' doctrine generally provides that a cause of action does not accrue until the plaintiff either knows or reasonably should know of the tortious act giving rise to the cause of action."); Fla. Stat. § 95.031(2)(b). Indeed, the authorities on which Plaintiffs rely in support of their

31

"manifestation doctrine" all address product liability claims. *See Pulmosan*, 752 So. 2d 556 (product liability claim for negligence against sand manufacturer); *Eagle-Picher Indus., Inc. v. Cox*, 481 So. 2d 517 (Fla. Dist. Ct. App. 1986) (product liability claims related to asbestos products); *Wilson v. Johns-Manville Sales Corp.*, 684 F.2d 111 (D.C. Cir. 1982) (same); *see also* Br. at 30; DE 554 at 14 n.7. Because this is not a product liability action, the delayed discovery doctrine does not apply.[9] *See New Life*, 303 So. 3d at 923 (holding that the default accrual rule applies in all cases *except* those expressly identified by statute).

Plaintiffs also cite *Doe v. Cutter Biological*, 813 F. Supp. 1547 (M.D. Fla. 1993), for the proposition that the statute of limitations accrued here only once Plaintiffs had "notice of the possible invasion of [their] legal rights," *id.* at 1555, which Plaintiffs claim was well after their diagnoses, *see* Br. at 5, 16. Plaintiffs claim that Pratt & Whitney "originally conceded" in the *Wise* case that, based on *Doe v. Cutter*, "the date of diagnosis has nothing to do with the accrual of exposure actions." Br. at 5, 16.

Neither proposition is accurate. *First*, *Doe v. Cutter* is another product liability case that relies upon provisions of Florida law inapplicable here. 813 F. Supp. at 1554 (applying Fla. Stat. § 95.031(2) codifying the delayed discovery

---

[9] Accordingly, Plaintiffs' discussion of Florida jury instructions applying to product liability claims, or the statutory provisions that apply to product liability claims, Br. at 27-32, is irrelevant.

doctrine for product liability claims). *Second*, in previously moving to dismiss the *Wise* complaint, Pratt & Whitney did not concede that a later accrual date applies. Rather, Pratt & Whitney's brief gave Plaintiffs the benefit of an accrual date a year after Mr. Wise's diagnosis to illustrate that the statute of limitations had long since passed regardless of how the Court determined the accrual date of his claims. DE 398-2 at 15 ("Plaintiffs claims' accrued, *at the very latest*, in August 2009 when they knew Ronald Wise suffered an injury, and when a cancer cluster had been declared in the Acreage." (emphasis added)). Pratt & Whitney specifically argued that the delayed discovery doctrine did not apply. *Id.*[10]

### 2. There Is No Basis For Delayed Accrual Beyond Florida's Statutory Framework

Notwithstanding the plain statutory framework applicable here, Plaintiffs invite this Court to apply the delayed discovery doctrine to their claims, arguing that the doctrine should apply beyond products liability. *See* Br. at 26-27. But as the Florida Supreme Court recently stated in *New Life Community Church*, "[t]he statutory framework leaves no room for supplemental common law accrual rules."

---

[10] Plaintiffs also mention that Pratt & Whitney "rel[ied] on product liability precedent" in briefing the merits of the *Santiago* matter, seemingly implying that Pratt & Whitney's reliance on that precedent is an acknowledgement that these are product liability cases. Br. at 10. But the authorities on which Pratt & Whitney relied—which set baseline requirements for establishing general and specific causation in toxic tort cases, *e.g.*, *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296 (11th Cir. 2014)—do not somehow transform Plaintiffs' allegations into product liability claims, or suggest they are such claims.

303 So. 3d at 923. Given the Florida legislature's "statutorily expressed will" that the delayed discovery doctrine should apply only in product liability cases and other matters not at issue here, it is the judiciary's role to follow that will, "whatever its merits as a matter of policy." *Id.* at 924. This Court should reject Plaintiffs' invitation to apply the delayed discovery doctrine beyond the limits the Florida legislature has carefully imposed.

## III. PLAINTIFFS' OTHER EFFORTS TO AVOID THE FOUR-YEAR LIMITATIONS PERIOD ALSO FAIL

Left without any basis under Florida law to postpone the date their claims accrued, Plaintiffs turn to two additional arguments. *First*, Plaintiffs argue that Florida Statute § 376 should supply the relevant state law "rules for decision" governing Plaintiffs' claims per the Price-Anderson Act. Br. at 34-37; *see* 42 U.S.C. § 2014(hh). Plaintiffs interpret § 376 to exclude any statute of limitations, and thus argue that no statute of limitations applies to Plaintiffs' claims. Br. at 38-40. *Second*, Plaintiffs argue that the "continuing trespass" or "continuing tort" doctrine should apply here, and that the statute of limitations should "not begin to run until the harm is abated." *Id.* at 40-41.

Neither argument has any merit. As the District Court explained, an action for strict liability under § 376 is fundamentally inconsistent with the Price-Anderson Act, and thus cannot provide the relevant state law rules for decision. 42

U.S.C. § 2014(hh); *see* DE 554 at 15-16.[11] Even if § 376 governed, Florida law provides a four-year statute of limitations for claims based on statutory liability, such as § 376 claims. DE 554 at 16-18.

Regarding the continuing tort doctrine, Plaintiffs failed to present the issue in their briefing below and the District Court did not rule on the issue. Even if the issue was properly preserved, the doctrine does not apply here. Plaintiffs seek damages for cancers diagnosed in the past based on allegedly completed acts, rather than abatement of the type of ongoing environmental pollution typically at issue in continuing tort cases.

### A.    Florida Statute § 376 Cannot Provide The Relevant Limitations Period For Plaintiffs' Claims, And Even If It Could, The Limitations Period Would Be Four Years

### 1.    Section 376 Claims Are Fundamentally Inconsistent With The Price-Anderson Act

The parties agree that Florida state law provides the substantive rules for decision for Plaintiffs' Price-Anderson Act claims under the plain terms of the Act.

---

[11] This Court can affirm for the additional, independent reason that Plaintiffs limited their § 376 claims to *non*-radioactive materials, while conceding that they had no evidence that non-radioactive materials caused their brain cancers. *See, e.g.*, DE 74 ¶ 224 (*Cotromano* Am. Compl.) (alleging § 376 claim to include only "materials *not* defined as either source [or] by-product materials" under the Price-Anderson Act (emphasis added)); DE 548 ¶ 7 (admitting that no Plaintiff submitted a general causation expert opinion associating non-radioactive contaminants with brain cancer); *see also* DE 539 at 8-10; *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017) ("We may affirm on any ground supported by the record, regardless of whether that ground was relied upon or even considered below.").

*See* Br. at 16; 42 U.S.C. § 2014(hh). Plaintiffs argue that the Court should rely on

Florida Statute § 376 as the basis to inform the applicable statute of limitations.

Plaintiffs ignore the express text of the Price-Anderson Act, however, which

provides that Florida law applies "unless such law is inconsistent with the

provisions" of the Act. 42 U.S.C. § 2014(hh). Put simply, state law claims that are

inconsistent with the terms and structure of the Act cannot supply the substantive

state law for Price-Anderson Act claims. *See, e.g.*, *Wilcox v. Homestake Mining*

*Co.*, 401 F. Supp. 2d 1196, 1200-01 (D.N.M. 2005).

 Florida Statute § 376 creates a strict liability cause of action for injuries

caused by prohibited environmental discharges. *See* Fla. Stat. § 376.313(3); *see*

*generally Lieupo v. Simon's Trucking, Inc.*, 286 So. 3d 143 (Fla. 2019) (concluding

that personal injury damages can be recovered under § 376). Importantly, "it is not

necessary" for a § 376 plaintiff "to plead or prove negligence in any form or

manner. Such person need only plead and prove the fact of the prohibited

discharge or other pollutive condition and that it has occurred." Fla. Stat.

§ 376.313(3).

 Section 376's strict liability regime is designed to expand the potential

liability of those responsible for environmental discharges. *Aramark Unif. &*

*Career Apparel, Inc. v. Easton*, 894 So. 2d 20, 25 (Fla. 2004) ("The apparent

purpose of [§ 376] is to make it *easier* for victims of pollution to recover for

damages resulting from a pollutive discharge or conditions of pollution."
(emphasis added)). To that end, the statute operates to *reduce* a plaintiff's burden
of proof, while increasing the scope of possible conduct by a defendant that
warrants liability under the statute. *See id.* at 23-24.

The Price-Anderson Act, by contrast, aims to *limit* a defendant's liability by
imposing a uniform federal standard of care (which, in turn, increases a plaintiff's
burden of proof). As this Court explained in *Roberts v. Florida, Power & Light
Co.*, the Price-Anderson Act was a reaction to private power companies'
"reluctan[ce] to invest in nuclear facilities . . . because of concerns about their
liability." 146 F.3d at 1306. Amendments to the Act "creat[ed] an exclusive federal
cause of action for radiation injury" in service of a "comprehensive federal nuclear
regulatory framework." *Id.* at 1306-08. This federal cause of action imposes a
federally regulated standard of care which *heightens* plaintiffs' burden of proof.
Plaintiffs must prove not only that a defendant breached the ordinary duty of care
but must establish that the defendant "breached its duty of care by exposing
[plaintiff] to an amount of radiation in excess of the maximum permissible amount
allowed by federal regulation . . . ." *Id.* at 1308.

Because § 376 imposes strict liability, eschewing negligence "in any form or
manner," it is fundamentally inconsistent with the Price-Anderson Act and the
federally regulated standard of care the Act imposes. Courts analyzing similar

strict liability claims have regularly concluded that they are inconsistent with the Price-Anderson Act. *City of Metropolis v. Honeywell Int'l*, No. 21-CV-860-SMY, 2022 WL 17488478, at *4 (S.D. Ill. Dec. 7, 2022) (dismissing claim for strict liability because "a claim for ultrahazardous/strict liability would be inconsistent with the [Price-Anderson Act] and create the possibility that [defendant] met the mandated federal standard of care, but [could] still be held strictly liable under Illinois state law"); *Wilcox*, 401 F. Supp. 2d at 1200-01 ("Contrary to an action for negligence, an action for absolute or strict liability acts in the opposite of a federal safety regulation. . . . Therefore, the cause of action for absolute and strict liability is found to be inconsistent with the Act.").[12] Keeping with these authorities, the District Court correctly found § 376 could not supply the relevant statute of limitations in this case. *See* DE 554 at 16; 42 U.S.C. § 2014(hh).

Plaintiffs urge that § 376 is consistent with the Price-Anderson Act because both statutes require a Plaintiff to show a discharge in excess of a regulatory standard. Br. at 36. This argument misses the mark for two reasons. *First*, § 376

---

[12] *Accord Lawson v. Gen. Elec. Co.*, 140 F. Supp. 3d 968, 974 (N.D. Cal. 2015); *Ryman v. Regents of Univ. of Calif.*, No. 08-CV-372 WDS/RLP, 2008 WL 11411296, at *1 (D.N.M. Oct. 27, 2008); *Koller v. Pinnacle W. Capital Corp.*, No. CV–06–2031–PHX–FJM, 2007 WL 446357, at *3 (D. Ariz. Feb. 6, 2007); *O'Connor v. Boeing N. Am., Inc.*, No. CV 00-0186 DT RCX, 2005 WL 6035255, at *43 (C.D. Cal. Aug. 18, 2005); *Bohrmann v. Me. Yankee Atomic Power Co.*, 926 F. Supp. 211, 221 (D. Me. 1996).

employs a strict liability scheme tied to state regulatory standards, not the "maximum permissible amount allowed by federal regulation" as provided under the Price-Anderson Act. *Roberts*, 146 F.3d at 1308. *Second*, as highlighted by this Court's decision in *Roberts*, the Price-Anderson Act requires a plaintiff to demonstrate that the defendant violated a "duty of care," whereas § 376 expressly disavows any requirement that the plaintiff "plead or prove negligence in any form or manner." *Compare id.* at 1308, *with* Fla. Stat. § 376.313(3).[13]

Courts across the country have uniformly concluded that state law strict liability claims are inconsistent with the Price-Anderson Act such that they cannot supply the substantive rules for decision for a public liability action. Notably, despite urging the Court to adopt state law substantive rules for decision associated with Florida Statute § 376, Plaintiffs cannot identify a single court that has ever drawn the substantive rules for decision for a Price-Anderson Act claim from a state strict liability claim.

---

[13] Plaintiffs suggest that *Roberts* "did not rule that strict liability claims . . . were any more preempted than negligence claims" under the Price-Anderson Act. Br. at 36. Of course, a state strict liability claim for which the plaintiff must show a defendant violated a federally mandated "duty of care" is no longer a state strict liability claim. It is effectively a negligence claim subject to federal law.

### 2.    A Four-Year Statute Of Limitations Applies To § 376 Claims

Because § 376 is inconsistent with the Price-Anderson Act, this Court need not decide what statute of limitations applies to such claims. Nevertheless, the District Court correctly concluded that a four-year statute of limitations would apply. DE 554 at 18. Florida law provides a default four-year statute of limitations for causes of action "founded on a statutory liability." Fla. Stat. § 95.11(3)(f). By its plain terms, that default statute of limitations applies to claims asserted under § 376. Even if § 376 could supply the substantive rules for decision for a Price-Anderson Act claim (it cannot), Plaintiffs' claims would still be subject to a four-year limitations period, and thus time-barred.

Plaintiffs argue, based on Florida Statute §§ 376.308(2) and 376.313(3), that there is no statute of limitations that applies to § 376 claims. Br. at 38-40. They claim that because § 376.308(2), which lists the defenses available to a § 376 claim, does *not* list the statute of limitations as an available defense, the Florida legislature intended to exclude the defense in § 376 actions entirely.

Plaintiffs' reading of § 376.308(2) is incorrect and would lead to absurd results. Tellingly, only one Middle District of Florida decision has adopted it. *Jerue v. Drummond Co., Inc.*, No. 8:17-CV-587-T-17AEP, 2017 WL 10876737, at *5 (M.D. Fla. Aug. 17, 2017). Taken to its logical extent, Plaintiffs' interpretation would mean that § 376 excludes all manner of legal and statutory defenses,

40

including basic defenses like personal jurisdiction, *res judicata*, and improper venue. That cannot be what was intended.

Instead, as a Florida appellate court has reasoned, the statute is properly read—consistent with the overall purpose of § 376—as excluding only those defenses that are "exceptions to the general rule of strict liability." *Gen. Dynamics Corp. v. Brottem*, 53 So. 3d 334, 338 (Fla. Dist. Ct. App. 2010).[14] The weight of the case law supports this interpretation, as courts have repeatedly analyzed the timeliness of plaintiffs' § 376 claims. *See, e.g.*, *Clark v. Ashland Inc.*, No. 2:13–cv–794–FtM–29DNF, 2015 WL 1470657, at *3-4 (M.D. Fla. Mar. 31, 2015) (analyzing the timeliness of plaintiffs' § 376 claims under the four-year statute of limitations in Fla. Stat. § 95.11(3)(f)); *Cal. Fin., LLC v. Perdido Land Dev. Co.*, 303 F. Supp. 3d 1306, 1310-11 (M.D. Fla. 2017) (same); *see also Irizarry v. Orlando Utilities Comm'n*, No. 619CV268ORL37EJK, 2020 WL 3266215, at *2 (M.D. Fla. Apr. 3, 2020) (assessing the availability of a statute of limitations for § 376 claims as an "interesting" question "best left for the Florida state courts to

---

[14] Plaintiffs attempt to distinguish *General Dynamics* on the basis that the workers' compensation defense involved in that case was an "immunity defense." Br. at 40. But that point has nothing to do with the court's decision. Instead, as Plaintiffs acknowledge, *id.*, the court's decision turned on the point that § 376 "cannot reasonably be read as barring defenses such as improper venue, lack of personal jurisdiction, *res judicata*, and the statute of limitations," *Gen. Dynamics*, 53 So. 2d at 338.

determine" before analyzing the timeliness of the claims under Fla. Stat. § 95.11(3)(f)).[15]

As the District Court concluded, even if the statute of limitations associated with § 376 could apply to Plaintiffs' Price-Anderson Act claims, the limitations period would be four years, and Plaintiffs' claims would still be time-barred.

## B. The "Continuing Trespass" Or "Continuing Tort" Doctrine Does Not Apply

In a last-ditch effort to save their claims from the statute of limitations, Plaintiffs assert that the "continuing trespass doctrine" should apply to toll the expiration of the statute of limitations. Br. at 40. Yet Plaintiffs did not raise this issue in their summary judgment brief below, and the District Court did not address it in its ruling. Plaintiffs brought up the issue tangentially for the first time at oral argument. *See* DE 574 at 32:2-33:3; 71:24-72:24. Thus, Plaintiffs waived the issue. *See Bryant v. Jones*, 575 F.3d 1281, 1296 (11th Cir. 2009).

Even if adequately preserved, these cases do not involve a "continuing trespass." Plaintiffs' personal injury claims arise from actions they allege caused them to develop brain cancer. Each cause of action they allege, including trespass,

---

[15] Some of the cases analyzing the statute of limitations under § 376 conclude that the claims are subject to the "continuing tort" doctrine because the claims seek to abate ongoing pollution. *E.g.*, *Irizarry*, 2020 WL 3266215. at *2-3. As explained in the next section, the continuing tort doctrine does not apply to the personal injury claims at issue here.

seeks damages for a concrete injury at a time certain. As such, Plaintiffs seek damages not for a continuing tort, but for injuries that were diagnosed in the past, purportedly resulting from "an original, completed act." *See Suarez v. City of Tampa*, 987 So. 2d 681, 686 (Fla. Dist. Ct. App. 2008) (quoting *Horvath v. Delida*, 540 N.W.2d 760, 763 (Mich. Ct. App. 1995)); DE 407 at 13 (explaining in the *Santiago* case that "the tort was completed when [Ms. Santiago] allegedly contracted cancer from nuclear contamination. Thus, there would not be a continuing invasion of [Ms. Santiago's] rights after [she] allegedly contracted cancer."). The continuing trespass doctrine is inapplicable to Plaintiffs' claims.

The cases Plaintiffs cite in support of the "continuing trespass" doctrine reinforce this conclusion. *See* Br. at 40-41. Each of the cases involves a state environmental enforcement action seeking the abatement of ongoing pollution. *See generally Fla. Dep't of Env't Prot. v. Fleet Credit Corp.*, 691 So. 2d 512, 513-14 (Fla. Dist. Ct. App. 1997); *Fla. Dep't of Env't Regul. v. CTL Distribution, Inc.*, 715 So. 2d 262, 264-65 (Fla. Dist. Ct. App. 1998). Plaintiffs do not identify a single case applying the "continuing trespass" doctrine to a completed personal injury claim like those here.

**IV.  THE DISTRICT COURT PROPERLY EXERCISED ITS DISCRETION IN PERMITTING PRATT & WHITNEY TO ASSERT THE STATUTE OF LIMITATIONS DEFENSE**

The District Court did not err in exercising its discretion to allow Pratt & Whitney to assert the statute of limitations defense. Under this Court's decision in *Grant v. Preferred Research, Inc.*, a defendant's failure to plead the statute of limitations as an affirmative defense does not waive the defense if the plaintiff has notice of the defense and does not suffer prejudice. 885 F.2d 795, 797-98 (11th Cir. 1989); *see also Aponte v. Brown & Brown of Fla.*, 806 F. App'x 824, 831-32 (11th Cir. 2020).

Here, Plaintiffs were on notice that the statute of limitations was at issue because Pratt & Whitney pled the defense in other consolidated cases, including the *Wise* and *Santiago* cases. Pratt & Whitney moved to amend its answers after Plaintiffs' expert disclosures narrowed their claims to focus on radioactive materials, years before filing the summary judgment motions at issue in this appeal. And Plaintiffs failed to demonstrate any prejudice, having had ample opportunity (and motivation) to conduct discovery related to the statute of limitations during the discovery period or to seek leave to pursue additional discovery or amend their pleadings to add claims to address the statute of limitations. The District Court therefore properly relied on *Grant* in permitting Pratt & Whitney to assert the statute of limitations.

44

Under *Grant*, it is not necessary for a defendant to even plead the statute of limitations defense. As such, it was not necessary for Pratt & Whitney to show good cause to amend its answers. Nevertheless, Pratt & Whitney demonstrated good cause to amend based on Plaintiffs' expert disclosures. Not only that, but any error in permitting Pratt & Whitney to amend was harmless. Rather than pursue any additional discovery or seek to amend their complaints in response to Pratt & Whitney's assertion of the statute of limitations defense, Plaintiffs sought a stay of these cases and did nothing to pursue them for nearly three years. When Pratt & Whitney sought to reopen the cases, Plaintiffs initially opposed the motion, or alternatively agreed that if Plaintiffs' cases were to be reopened, they were ready for summary judgment briefing on the statute of limitations. Because Plaintiffs made no attempt to avoid the statute of limitations and could not do so based on Florida law, any error was harmless.

### A.  Plaintiffs Had Notice Of The Statute Of Limitations Defense And Failed To Show Prejudice

The District Court properly allowed Pratt & Whitney to assert the statute of limitations defense because Plaintiffs had adequate notice of the defense and could not show prejudice. DE 409 at 6-7. In doing so, the District Court relied primarily on this Court's decision in *Grant*. In *Grant*, the defendant raised the statute of limitations for the first time in a motion for summary judgment filed approximately one month before trial. 885 F.2d at 797. The defendant had not pled the statute of

limitations in its answer, and the plaintiff argued that the defendant had waived the defense. *Id.* The district court disagreed. *Id.* Because the plaintiff "was fully aware that [defendant] intended to rely on a statute of limitations defense" and "d[id] not assert any prejudice from the lateness of the pleading," this Court affirmed the district court's decision to allow the defendant to assert the defense. *Id.* at 797-98.

Since *Grant*, this Court has repeatedly affirmed district courts that have exercised their discretion to permit a defendant to pursue an unpled affirmative defense when the plaintiff was otherwise on notice and could not establish prejudice. *See Aponte*, 806 F. App'x at 832 (permitting defendant to pursue unpled affirmative defense under the FMLA); *Tri-Lady Marine Ltd. v. Bishop Mech. Servs.*, 763 F. App'x 882, 885 (11th Cir. 2019) (permitting defendant to pursue unpled defense based on a limitation of damages clause, given notice and lack of prejudice to plaintiff); *Edwards v. Fulton Cty.*, 509 F. App'x 882, 887-88 (11th Cir. 2013) (permitting defendant to pursue unpled defense under the Equal Pay Act and collecting cases).

The same result follows here. Pratt & Whitney sought leave to amend years before it filed summary judgment motions against the Plaintiffs at issue in this appeal, and well before trial dates were even set in these cases. DE 409 at 7. In contrast to *Grant*, where the defendant first raised the statute of limitations defense a month before trial, Plaintiffs here had years of notice to rebut or otherwise

challenge Pratt & Whitney's statute of limitations defense. Indeed, these Plaintiffs had notice of the statute of limitations defense from the outset of these cases because Pratt & Whitney asserted the defense in other consolidated cases, including the *Wise* and *Santiago* cases. DE 409 at 6-7; DE 46 (14-80655) at 62 (*Wise* Answer); DE 14 (14-81385) at 60 (*Santiago* Answer).[16]

Likewise, Plaintiffs failed to demonstrate any prejudice from Pratt & Whitney raising the statute of limitations defense in their cases. As the District Court correctly pointed out, Plaintiffs' claims proceeded through coordinated discovery with the cases in which Pratt & Whitney asserted a statute of limitations defense. DE 409 at 6-7. Plaintiffs' counsel thus had every opportunity and motivation to establish evidence to rebut the statute of limitations or pursue additional claims during the discovery period. *Id.* Moreover, despite telling the District Court that allowing Pratt & Whitney to add a statute of limitations defense would require the parties to re-do discovery or Plaintiffs to add additional claims, Plaintiffs never sought leave to do so.

Plaintiffs cannot claim prejudice when they have failed to take any steps—either during the initial discovery period or subsequently—to seek the discovery or add the claims they assert would avoid the statute of limitations. And, as Plaintiffs

---

[16] Because Pratt & Whitney asserted the statute of limitations against Plaintiff Wise from the outset, this Court need not reach the amendment issue as to his case.

admitted, "the prospect that they might lose the case if the defense is asserted is not [adequate] prejudice." DE 409 at 6 n.6; DE 432 at 48:13-16. As such, the District Court carefully exercised its discretion under *Grant* to permit Pratt & Whitney to assert the statute of limitations defense.

Plaintiffs are left to make threadbare accusations that Pratt & Whitney's "delay" in asserting the statute of limitations defense bespeaks "bad faith or dilatory motive" designed to "box" Plaintiffs into "a single theory among their alternate claims." Br. at 46-47. As explained below, Pratt & Whitney's amendment of its answers was justified considering Plaintiffs raised wide-ranging allegations related to non-radioactive materials. *E.g.*, DE 74 (13-80929) ¶¶ 123, 139 (*Cotromano* Am. Compl.). Pratt & Whitney moved to amend its answers once Plaintiffs served expert reports clarifying the scope of their claims rested on the allegation that purported exposure to radioactive materials caused their illnesses.

Regardless, as Plaintiffs' experts themselves admit, Plaintiffs narrowed their claims to focus on radioactive materials because such materials provide the "only established environmental risk factor for brain and central nervous system (CNS) cancers." DE 289-3 at 14. Put simply, *scientific evidence* forced Plaintiffs to narrow their claims, not some strategic gambit that they were lulled into by Pratt & Whitney. Moreover, the actual application of the statute of limitations is based on

immutable and unchangeable facts (like Plaintiffs' diagnosis dates) apparent from the face of their complaints.

There is no merit to Plaintiffs' allegations of bad faith nor any prejudice in the District Court's decision to allow Pratt & Whitney to assert its statute of limitations defense. Plaintiffs fail to identify any basis for this Court to conclude the District Court abused its discretion.

### B.    Pratt & Whitney Did Not Need To Demonstrate Good Cause To Assert The Statute Of Limitations, Yet Did So Nevertheless

The District Court correctly concluded that, under *Grant*, Pratt & Whitney did not have to show good cause to assert the statute of limitations defense. *See* DE 409 at 7. Indeed, under *Grant*, Pratt & Whitney did not even need to amend its answers to assert the defense, rendering any good-cause standard under Federal Rule of Civil Procedure 16 inapplicable. *See Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 & n.2 (11th Cir. 1998); Br. at 42-44.

Regardless, Pratt & Whitney demonstrated good cause. *Waldman*, 871 F.3d at 1289 ("We may affirm on any ground supported by the record, regardless of whether that ground was relied upon or even considered below."). The District Court, while nevertheless granting Pratt & Whitney leave to amend, determined that Pratt & Whitney had not demonstrated good cause, reasoning in part that Pratt & Whitney had not "pointed to newly-obtained discovery that gave rise to the assertion" of the statute of limitations. DE 409 at 3-4. Yet it was Plaintiffs' expert

disclosures that narrowed Plaintiffs' claims and precipitated Pratt & Whitney's decision to seek leave to amend. DE 370-3; *see* DE 289-3. That new discovery, coupled with Pratt & Whitney seeking amendment before summary judgment and before trial dates were set, was sufficient to establish good cause. *See O'Brien v. Town of Bellingham*, 943 F.3d 514, 528 (1st Cir. 2019) (finding good cause to amend to add affirmative defense where defendants learned of basis for defense during discovery, plaintiffs received notice of defense in connection with motions *in limine* and for summary judgment, and plaintiffs had adequate opportunity to address the defense).

### C.    Any Error In Permitting Pratt & Whitney To Assert The Statute Of Limitations Was Harmless

Even if the District Court abused its discretion in permitting Pratt & Whitney's amendment (it did not), any possible error was harmless. *See Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1276, 1291 (11th Cir. 2008) (affirming district court where any abuse of discretion in permitting amended pleading was harmless). Plaintiffs' primary argument for harm suffered from the District Court's decision to allow Pratt & Whitney to amend stems from the assertion that they were denied an adequate opportunity to discover their claims or to plead additional claims to avoid the statute of limitations. That argument fails for two fundamental reasons.

*First*, no amount of additional discovery or pleading could save Plaintiffs' claims from the operation of Florida's statute of limitations. Plaintiffs concede that (a) their claims are based solely on radioactive materials, and thus subject to Florida's statute of limitations, as this Court ruled in *Santiago*; and (b) Plaintiffs were diagnosed more than four years prior to filing suit. No amount of discovery can change the facts surrounding the purported exposure Plaintiffs alleged caused their injury or the date on which each Plaintiff was diagnosed. Plaintiffs' claims are therefore time-barred under Florida law based on the uncontroverted facts stated on the face of Plaintiffs' complaints. And any attempt to plead a product liability claim against Pratt & Whitney would have been futile, since Plaintiffs have no good faith basis to allege any product that Pratt & Whitney distributed commercially for use or consumption that Plaintiffs then purchased or received.

*Second*, Plaintiffs took no steps to obtain further discovery or amend their pleadings in the three years following the District Court's decision to allow Pratt & Whitney to amend. Setting aside their motivation to conduct discovery on the statute of limitations during the initial discovery period, Plaintiffs had every opportunity to seek leave to reopen discovery or ask for leave to amend their complaints. Instead of doing so, Plaintiffs asked the District Court to *stay* their claims pending the appeal in the *Santiago* case, which the District Court granted

over Pratt & Whitney's objection. *See* DEs 409 & 436. These cases were then stayed for over three years.

During that entire time, Plaintiffs never sought to reopen their cases to pursue new claims or parties or conduct additional discovery. This is despite having theorized in briefing and argument before the Court the very discovery and claims they wished they could pursue, *see* DE 381 at 11-12, DE 432 at 52:25-55:23, 58:7-63:9, and discussing with the Court ways in which they could add to the record to try and evade the statute of limitations even without reopening discovery, *see* DE 432 at 40:16-24. Instead, when Pratt & Whitney moved to reopen the cases, Plaintiffs opposed reopening them, or alternatively *agreed* that if the cases were to be reopened, the Court should enter a briefing schedule for summary judgment motions on the statute of limitations. DE 534 at 13.

Based on the facts relevant to the statute of limitations and their course of conduct, Plaintiffs have no viable claim that they were harmed by the District Court's decision to grant Pratt & Whitney leave to amend. At bottom, Plaintiffs' only real harm or prejudice is that their claims cannot survive the statute of limitations based on the undisputed facts, which, as they admitted to the District Court, is not the type of prejudice a court considers under *Grant*. DE 409 at 6 n.6; DE 432 at 48:13-16. As such, any error by the District Court in permitting Pratt & Whitney to pursue the statute of limitations defense was harmless and does not

52

constitute a basis for this Court to reverse the District Court's exercise of its

discretion to grant leave to amend.

## <u>CONCLUSION</u>

For the reasons stated above, Pratt & Whitney requests that the Court affirm the judgment against Plaintiffs.

Respectfully submitted,

/s/ *Andrew C. MacNally*
ANDREW C. MACNALLY
ABBY M. MOLLEN
DANIEL R. MCELROY
WILLIAM D. GOHL
BARTLIT BECK LLP
54 W. Hubbard Street, Suite 300
Chicago, IL 60654
Telephone: (312) 494-4448
Facsimile: (312) 494-4440
abby.mollen@bartlitbeck.com
andrew.macnally@bartlitbeck.com
daniel.mcelroy@bartlitbeck.com
will.gohl@bartlitbeck.com

JACK J. AIELLO
Florida Bar No. 440566
GREGOR J. SCHWINGHAMMER, JR.
Florida Bar No. 090158
GUNSTER, YOAKLEY & STEWART, P.A.
777 South Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
Telephone: (561) 655-1980
Facsimile: (561) 655-5677
jaiello@gunster.com
gschwinghammer@gunster.com

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that this brief complies with the type-volume limitation of Rule 32(a)(7), Federal Rules of Appellate Procedure, in that it contains 12,282 words (including words in footnotes), excluding the parts of the document exempted by FRAP 32(f), according to the word-processing system used to prepare this brief. This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6).

*/s/ Andrew C. MacNally*
Andrew C. MacNally

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 11, 2023, 4 copies of the brief were

dispatched for delivery to the Clerk's Office of the United States Court of Appeals

for the Eleventh Circuit by third-party commercial carrier for overnight delivery at

the following address:

David J. Smith
Clerk of Court
U.S. Court of Appeals for the 11th Circuit
56 Forsyth St., N.W.
Atlanta, Georgia 30303

*/s/ Andrew C. MacNally*
Andrew C. MacNally